769 F.2d 958
 38 Fair Empl.Prac.Cas. 992,
37 Empl. Prac. Dec. P 35,449, 54 USLW 2103,
2 Fed.R.Serv.3d 452, 6 Employee Benefits Ca 1989
 Marguerite FARISS, Administratrix of the Estate of Ewell W.
Fariss, Appellant,
v.
LYNCHBURG FOUNDRY, a Mead Corporation, Appellee.
Ewell W. FARISS, Appellee,
v.
LYNCHBURG FOUNDRY, a Mead Corporation, Appellant.
 Nos. 84-2137, 84-2169.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 1, 1985.
Decided Aug. 5, 1985.
 
 Nate L. Adams, III, Roanoke, Va. (Donald W. Huffman, Bird, Kinder & Huffman, Roanoke, Va., on brief), for appellant.
 Edmund M. Kneisel, Atlanta, Ga. (Charles M. Rice, Kilpatrick & Cody, Atlanta, Ga., Robert C. Wood, III, Edmunds & Williams, Lynchburg, Va., on brief), for appellee.
 Before HALL, WILKINSON and SNEEDEN, Circuit Judges.
 WILKINSON, Circuit Judge:
 
 
 1
 Ewell W. Fariss, the original plaintiff in this action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 621 (1982) et seq., brought suit against defendant Lynchburg Foundry Company, alleging he had been terminated from employment because of his age. He sought reinstatement, back pay and punitive damages.
 
 
 2
 Mr. Fariss died and his widow, Marguerite S. Fariss, was appointed administratrix of his estate. Defendant thereafter filed a Suggestion of Death Upon the Record, serving a copy on the deceased plaintiff's attorney. Mrs. Fariss was never personally served. After obtaining new counsel, Mrs. Fariss moved to substitute herself as plaintiff, which the district court permitted over defendant's objection. As amended, her complaint alleged a "willful" violation of the ADEA, and sought only monetary relief, with a pendent state law contract claim.
 
 
 3
 The district court, 588 F.Supp. 1369, granted summary judgment for defendant. It held that plaintiff lacked a claim for monetary relief because pension benefits Mr. Fariss received from defendant after his termination exceeded defendant's liability for back wages and life insurance premiums. Plaintiff appeals from the summary judgment for defendant, while defendant cross-appeals from the substitution of Mrs. Fariss as plaintiff.
 
 
 4
 We affirm. Mrs. Fariss was properly substituted as plaintiff under Fed.R.Civ.P. 25(a). Plaintiff, however, would be entitled to no monetary relief even if she were to prevail on the merits. The proceeds of an employer-provided life insurance policy may not be claimed as the damages from a wrongful termination, but only the premiums that would have been paid to maintain coverage had the plaintiff remained employed. These premiums, together with back pay, are more than offset by the pension benefits Mr. Fariss received as a result of his termination, which must be deducted from any possible damages award.[1]
 
 
 5
 * Before addressing the damages issues, we must determine whether Mrs. Fariss was substituted as plaintiff for her deceased husband in a timely fashion. Defendant contends that because Mrs. Fariss did not move for substitution until more than 90 days after service of the suggestion of death on Mr. Fariss's original counsel, and no "excusable neglect" has been shown, Fed.R.Civ.P. 6(b)(2), this suit must be dismissed.
 
 
 6
 We hold that service on decedent's counsel alone was inadequate to commence running of the 90-day substitution period allowed by Fed.R.Civ.P. 25(a)(1). Where, as here, a personal representative has been appointed following the death of a party, the suggestion of death must be personally served on that representative. Because Mrs. Fariss never received such service, the substitution was timely.
 
 
 7
 Rule 25(a)(1) governs substitution of the proper successor or representative of a deceased party:
 
 
 8
 If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons, and may be served in any judicial district. Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided here for the service of the motion, the action shall be dismissed as to the deceased party.
 
 
 9
 The rule imposes no time limit for the substitution other than that commenced by proper service of a suggestion of death upon the record.[2] 3B J. Moore & J. Kennedy, Moore's Federal Practice p 25.06 [2.-1] (2d ed. 1982). As the suggestion of death is served in the same manner as the motion to substitute, a party may be served through his attorney, Fed.R.Civ.P. 5(b), but nonparties must be personally served. Fed.R.Civ.P. 4(d)(1).
 
 
 10
 The nonparties for whom Rules 25(a)(1) and 4(d)(1) mandate personal service are evidently the "successors or representatives of the deceased party." This conclusion follows both from the language of Rule 25(a)(1), which refers to no other nonparties, and from the rule's underlying policies. Rule 25(a)(1) directs that both parties and appropriate nonparties be served with the suggestion of death to commence the 90-day substitution period, for the rule seeks "to assure the parties to the action and other concerned persons of notice of the death so that they may take appropriate action to make substitution for the deceased party." 3B J. Moore & J. Kennedy, supra. The "successors or representatives of the deceased party" contemplated by the rule are those empowered to assert any legal claims of the decedent not extinguished by death,[3] or to defend the estate against others' claims. Personal service of the suggestion of death alerts the nonparty to the consequences of death for a pending suit, signaling the need for action to preserve the claim if so desired.
 
 
 11
 Service on decedent's attorney alone was inadequate. The attorney's agency to act ceases with the death of his client, see Restatement (Second) of Agency Sec. 120(1) (1958), and he has no power to continue or terminate an action on his own initiative. Because the attorney is neither a party, nor a legal successor or representative of the estate, he has no authority to move for substitution under Rule 25(a)(1), as the courts have repeatedly recognized. See, e.g., Boggs v. Dravo Corp., 532 F.2d 897, 900 (3d Cir.1976); Rende v. Kay, 415 F.2d 983, 985 (D.C.Cir.1969); Al-Jundi v. Rockefeller, 88 F.R.D. 244, 246 (W.D.N.Y.1980). But see Yonofsky v. Wernick, 362 F.Supp. 1005, 1011-12 (S.D.N.Y.1973) (suggestion of death held properly served on decedent's attorney where successor or representative unknown only two days after death).
 
 
 12
 Personal service on the successor or representative is hardly an onerous burden where, as here, the administratrix had already been appointed when service occurred. In some instances, it may prove more difficult to determine whom to serve, see Rende, 415 F.2d at 986; Yonofsky, 362 F.Supp. at 1011-12, but it is generally appropriate to require the serving party to shoulder that burden, rather than permitting the absence of notice to decedent's representative to lead to forfeiture of the action. Absent personal service, there is no reason to presume that the successor or representative, who must decide whether to pursue the claim, is aware of the substitution requirement. The administratrix may well, as here, be represented by different counsel. Either a motion to substitute, see Ransom v. Brennan, 437 F.2d 513, 518-19 (5th Cir.), cert. denied, 403 U.S. 904, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971), or the suggestion of death should have been served on the nonparty representative of the deceased, not merely on the deceased's attorney, to satisfy Rule 25(a)(1). Because Mrs. Fariss was never personally served, the 90-day substitution period never began, and the district court properly allowed the substitution.
 
 II
 
 13
 The principal question before us is whether plaintiff could recover anything if she were to prove age discrimination. Thus, the substantive issue of discrimination, which the district court did not resolve, is not relevant to this appeal, and we consider only what damages may be claimed.
 
 
 14
 Mr. Fariss worked for Lynchburg Foundry from August 23, 1941 until his termination on April 30, 1981 at the age of 61. He continued to receive full salary and benefits from his employer until September 1, 1981, enabling him to retire at age 62 with no reduction in pension benefits. Had Mr. Fariss remained employed from September 1, 1981 until his death on September 13, 1983, he would have earned, according to plaintiff, approximately $42,000 in salary including projected increases.[4] This amount may be claimed as back pay.
 
 
 15
 Upon his retirement, however, Mr. Fariss received a lump sum pension payment of $64,742.85 from the employer-funded company retirement plan. Because Mr. Fariss declined a survivor benefit option in July 1981 in favor of the lump sum, no pension benefits would have been paid had he remained employed until his death. If the lump sum pension payment is offset from back wages, plaintiff falls $22,742.85 short of having a claim for monetary relief. To maintain this action, she must thus identify potential damages from other sources exceeding that sum.[5]
 
 
 16
 Plaintiff attempts to identify such damages by reference to employer-provided life insurance coverage. Mr. Fariss was entitled to fringe benefits of employer-paid group medical and life insurance. Full medical coverage continued after retirement. Life insurance would have paid twice Mr. Fariss's annual salary, or $42,000 by plaintiff's estimate, had he died while employed, but declined to only $2,000 after retirement. Plaintiff seeks to recover the difference as damages. Defendant expended $5,085.28 in premiums to continue full medical and reduced life insurance coverage from September 1, 1981 until Mr. Fariss's death. Had Mr. Fariss remained employed, defendant would have paid $6,422.98 in premiums, an additional $1,337.70, to insure him for the same period. In defendant's view, accepted by the district court, plaintiff is at most allowed to recover the cost of these additional premiums, which are insufficient to create a claim for monetary relief.
 
 
 17
 Lynchburg Foundry employees could elect to convert their group life insurance to an individual policy, thereby preserving full coverage after retirement by paying the additional premium costs. No evidence has been presented that Mr. Fariss ever sought to purchase any substitute life insurance.[6]
 
 III
 
 18
 To avoid summary judgment, plaintiff must offer some evidence that, were she to establish discrimination, monetary relief would be due. Three damages issues are thus presented: 1) whether plaintiff may recover the proceeds of the life insurance policy that Mr. Fariss would have received had he died while employed, or only the premiums the employer would have paid for full coverage up to Mr. Fariss's death; 2) whether pension benefits received as a result of the termination should be offset from plaintiff's losses; and 3) whether plaintiff could recover liquidated damages under the ADEA. We hold that only the premiums may be claimed as damages and that no liquidated damages are available, while the pension benefits must be offset from back pay and other fringe benefits due. Thus, no claim for monetary relief exists.
 
 
 19
 A. We first consider what damages are due in an ADEA case for loss of a life insurance policy provided to employees by the employer as a fringe benefit.
 
 
 20
 Congress clearly intended that fringe benefits be available as monetary damages under the ADEA, along with back pay. 29 U.S.C. Sec. 626(b) (1982) provides that "[i]n any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section."[7] The "amounts owing" under the ADEA, Sec. 626(b), are legal damages, unlike the equitable remedies directing employment, reinstatement and promotion. Lorillard v. Pons, 434 U.S. 575, 583 n. 11, 98 S.Ct. 866, 871 n. 11, 55 L.Ed.2d 40 (1978). These "amounts owing" include both "items of pecuniary or economic loss such as wages, fringe, and other job-related benefits," and liquidated damages for nonpecuniary losses. H.R.Conf.Rep. No. 950, 95th Cong., 2d Sess. 13, reprinted in 1978 U.S.Code Cong. & Ad.News 504, 528, 535.
 
 
 21
 It follows that a claim for lost fringe benefits survives the death of an employee and is proper here.[8] Overwhelming judicial authority recognizes that employers guilty of discrimination are liable for fringe benefits they would have provided to employees as well as back wages under the ADEA. See, e.g. Kelly v. American Standard, Inc., 640 F.2d 974, 978 (9th Cir.1981); Loeb v. Textron, Inc., 600 F.2d 1003, 1021 (1st Cir.1979); Koyen v. Consolidated Edison Co., 560 F.Supp. 1161, 1164 (S.D.N.Y.1983); Kovalesky v. A.M.C. Associated Merchandising Corp., 551 F.Supp. 544, 549 (S.D.N.Y.1982); Loubrido v. Hull Dobbs Co., 526 F.Supp. 1055, 1059 (D.P.R.1981); Monroe v. Penn-Dixie Cement Corp., 335 F.Supp. 231, 234-35 (N.D.Ga.1971). Thus, the value of health or life insurance provided by the employer, see Coates v. National Cash Register Co., 433 F.Supp. 655, 663 (W.D.Va.1977); Combes v. Griffin Television, Inc., 421 F.Supp. 841, 844 (W.D.Okla.1976), is recoverable where age discrimination has occurred.
 
 
 22
 The question, of course, concerns the proper measure of value. We reject plaintiff's contention that the proceeds of the insurance are the appropriate measure of value here. Typically, as in this case, the insurance proceeds are paid not by the employer but by a third party insurer with whom the employer contracts.[9] By electing this method of protecting its employees, the employer manifests an intent to limit its own expenditures to definite and regular premiums, which ordinarily provide the basis for a damages calculation. See Combes, 421 F.Supp. at 844. But see Merkel v. Scoville, Inc., 570 F.Supp. 141, 146 (S.D.Ohio 1983) (refusing recovery of premiums paid by employer but allowing insured medical expenses).
 
 
 23
 We do not think Congress intended, as a general rule, to transform employers into insurers merely because an insurance policy is part of the compensation for employment. Although the insurance policy is the benefit an employee contracts to receive, the employer does not undertake to cover personally risks of loss of life or illness by purchasing a policy for employees. A large disparity exists between what the employer would actually have paid as premiums had Mr. Fariss remained on the job, $1,337.70, and the liability for the entire face value of the policy arising upon his death, an additional $40,000. In many instances, an obligation to pay the full proceeds of a life or health insurance policy could be staggering, amounting to many hundreds of thousands of dollars. The disincentives to providing employees insurance as a fringe benefit are evident; faced with such enormous potential liability, employers could be expected to consider compensating employees entirely in cash.
 
 
 24
 We decline to follow those decisions plaintiff cites favoring recovery of insurance proceeds or covered expenses. See Merkel, 570 F.Supp. at 146; Spagnuolo v. Whirlpool Corp., 550 F.Supp. 432, 433 (W.D.N.C.1982), aff'd in part, rev'd in part on other grounds, 717 F.2d 114 (4th Cir.1983); Willett v. Emory & Henry College, 427 F.Supp. 631, 633 (W.D.Va.1977), aff'd, 569 F.2d 212 (4th Cir.1978) (Title VII). Those courts prepared to place on the employer the risk that an employee will have an insured loss after termination misconstrue the "make whole" function of the ADEA. As this court has stated, the ADEA demands " 'the most complete relief possible' toward putting the victim of age discrimination back into the position he would have been in but for the unlawful discrimination." Spagnuolo v. Whirlpool Corp., 717 F.2d 114, 118 (4th Cir.1983), quoting Franks v. Bowman Transportation Co., 424 U.S. 747, 764, 96 S.Ct. 1251, 1264, 47 L.Ed.2d 444 (1976). Had Mr. Fariss not been terminated, he would have been covered by a life insurance policy with a $42,000 face value for the two years before his death. This insurance coverage, not the proceeds, is the benefit for which the employer must be held liable. Here the employer would in no event have been liable to the employee for the $42,000, but only for the continuing payment of premiums. The value of being insured for a given period is precisely the amount of the premiums paid. To require the employer to pay the face value of the policy would be to compel assumption of a risk not undertaken on behalf of any other employee.
 
 
 25
 Nor is it sufficient to respond that an employer who discriminates in violation of the ADEA deserves to bear such a sizable and unanticipated penalty, for in most instances, the employee can easily avoid the risk of being uninsured by purchasing an individual policy of comparable value. Where the employee elects to obtain substitute insurance, the "make whole" concept underlying ADEA damages, see Cline v. Roadway Express, Inc., 689 F.2d 481, 490 (4th Cir.1982), would permit full recovery of any additional premiums for the comparable individual policy beyond what the employer would have paid for group insurance. Merkel, 570 F.Supp. at 146; Pedreyra v. Cornell Prescription Pharmacies, Inc., 465 F.Supp. 936, 951 (D.Colo.1979) (Title VII). An ADEA plaintiff has a general duty to mitigate his damages "by seeking other available employment with reasonable diligence." Cline, 689 F.2d at 488. It is equally appropriate to require a plaintiff to purchase substitute insurance, if he wishes to claim any damages for loss of coverage above the employer-paid premiums. See Syvock v. Milwaukee Boiler Mfg. Co., 665 F.2d 149, 161 (7th Cir.1981); Buchholz v. Symons Manufacturing Co., 445 F.Supp. 706, 713 (E.D.Wis.1978) (cases denying recovery of lost insurance benefits where alternate coverage not purchased by plaintiff.) This rule of mitigation both assures a plaintiff that he will recover the full cost of purchasing comparable insurance should he prevail on his substantive claim, and serves to reveal whether the employee actually desired insurance protection, thereby avoiding a windfall recovery. Because there is no evidence here that Mr. Fariss attempted to obtain any substitute coverage, plaintiff can recover only the premiums the employer would have paid. We need not consider the measure of damages had he earnestly attempted to procure substitute individual coverage and found insurance unavailable for a person of his age and health.
 
 
 26
 We thus reject any employer liability for the proceeds of the employee life insurance policy here. Plaintiff's recovery could only encompass the $1,337.70 that defendant would have paid in premiums had the termination not occurred. These premiums, added to the $42,000 claimed in back wages, do not exceed the $64,742.85 lump sum pension Mr. Fariss received.
 
 
 27
 B. We agree with the district court that the pension benefits received in a $64,742.85 lump sum by Mr. Fariss following his termination should be offset from the damages plaintiff claims. An ADEA damages award "should only make the wrongly discharged employee monetarily whole under his employment contract; it should not provide a windfall." Cline, 689 F.2d at 490. If an employer's payment would not have been made had the employee continued working, it exceeds the damages necessary to make the plaintiff whole, and failure to offset it would necessarily lead to a windfall. EEOC v. Sandia Corp., 639 F.2d 600, 626 (10th Cir.1980) (severance pay).[10]
 
 
 28
 Such is the case here. Had Mr. Fariss continued working until he died, the pension would not have been paid at all, since he had declined the survivorship option offered by the employer. Therefore, he received the full benefit in direct consequence of his termination. Employer-provided pensions received as a result of termination have been generally offset from back pay claims under the ADEA. See e.g. Hagelthorn v. Kennecott Corp., 710 F.2d 76, 87 (2d Cir.1983); Orzel v. City of Wauwatosa Fire Dept., 697 F.2d 743, 756 (7th Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 484, 78 L.Ed.2d 680 (1983); Wise v. Olan Mills, Inc., 495 F.Supp. 257, 260 (D.Colo.1980). But see McDowell v. Avtex Fibers, Inc., 740 F.2d 214, 217-18 (3d Cir.1984), vacated on other grounds, --- U.S. ----, 105 S.Ct. 1159, 84 L.Ed.2d 312 (1985). When pension benefits are wrongfully withheld due to termination, they may be claimed as damages in an ADEA action. Loeb, 600 F.2d at 1021. If such benefits would not have been granted but for the termination, it is equally appropriate to offset them from an award for back pay and benefits. Otherwise, plaintiff would enjoy the rewards from the employer both of working and not working. Similarly, in NLRB v. Baltimore News American Division, 590 F.2d 554, 556 (4th Cir.1979), this court held that employees improperly retired in violation of labor laws who elected to return to work should have pension benefits received deducted from back wages due. In this case, Mr. Fariss had a substantial financial gain from his termination. Whether or not he suffered discrimination, he was more than $20,000 ahead at the time of his death. We cannot ignore the reality of his position in resolving plaintiff's claim.
 
 
 29
 C. Liquidated damages are available under the ADEA in an amount equal to other damages where the employer is guilty of "willful violations." 29 U.S.C. Sec. 626(b). As recently interpreted by the Supreme Court, this standard requires at least a "reckless disregard" by the employer of whether his conduct is prohibited by the ADEA. Trans World Airlines, Inc. v. Thurston, --- U.S. ----, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985). Here plaintiff alleged a "willful" violation in her amended complaint, and accordingly has grounds for claiming liquidated damages if the Trans World test is satisfied. The district court did not address this issue.
 
 
 30
 We are concerned, however, not with substantive liability but with a question of calculation. Liquidated damages under the ADEA for nonpecuniary losses are to be "calculated as an amount equal to the pecuniary loss." H.R.Conf.Rep. No. 950, 95th Cong., 2d Sess. 13, reprinted in 1978 U.S.Code Cong. & Ad.News 528, 535. The question is whether the liquidated damages should be assessed only with relation to damages claimed before any offset, or in an amount equal to the net loss after offset. Under the former view, plaintiff's claim for $43,337.70 in back wages and insurance premiums would be doubled before deducting the $64,742.85 lump sum pension, creating a monetary claim for relief; under the latter, nothing would exist to be doubled.
 
 
 31
 We hold that liquidated damages should be assessed only upon the net loss after offsets. Losses arising from a termination ought not to be artificially segregated from gains. Where there has been no overall pecuniary loss, we do not believe that Congress intended plaintiffs to receive a windfall liquidated damages award.
 
 
 32
 Our method of calculation does not "unfairly penalize" plaintiffs under a duty to mitigate, as asserted in EEOC v. United Air Lines, Inc., 575 F.Supp. 309, 311-12 (N.D.Ill.1983), modified and dismissed, 755 F.2d 94 (7th Cir.1985). Rather, it is just to withhold liquidated damages for presumed nonpecuniary losses where a plaintiff has fortuitously had a financial gain from termination. Liquidated damages are not punitive in nature but compensatory. H.R.Conf.Rep. No. 950 at 14, supra. Unlike punitive damages, they are not designed to serve the independent purpose of deterring employer misconduct,[11] and we see no reason to provide a compensatory award where there is no injury to compensate. We therefore determine that plaintiff could recover no liquidated damages here.
 
 IV
 
 33
 Plaintiff's damages claim for $42,000 in back wages and $1,337.70 in life insurance premiums arising from Mr. Fariss's termination in 1981 is more than offset by the $64,742.85 lump sum pension benefit he received as a result of that termination, and which would not have been paid had he died while employed in 1983. Thus, there has occurred no injury even if plaintiff should prevail on the substantive merits, and no relief can be awarded. We accordingly affirm the district court's summary judgment for defendant.
 
 
 34
 AFFIRMED.
 
 
 
 [1]
 Because the district court dismissed the federal claim prior to trial, it also correctly dismissed the pendent state law contract claim. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)
 
 
 [2]
 The 1963 amendment to Rule 25(a)(1) abolished the prior inflexible time limit of two years after the death for substitution. 3B J. Moore & J. Kennedy, Moore's Federal Practice p 25.01, (2d ed. 1982)
 
 
 [3]
 It is clear that an ADEA claim survives death of the original plaintiff and is subject to revival by his legal representative as a matter of federal law. Asklar v. Honeywell, Inc., 95 F.R.D. 419, 424 (D.Conn.1982). Where a federal question is presented, federal law, rather than state law, governs survival. 7A C. Wright & A. Miller, Federal Practice & Procedure Sec. 1952 at 642 (1972)
 
 
 [4]
 Defendant contends that Mr. Fariss's back wages would be only $39,500, based upon his monthly salary of $1,580. For summary judgment purposes, we accept plaintiff's calculation, as did the district court
 
 
 [5]
 After Mr. Fariss's termination, defendant offered in late 1981 and 1982 an enhanced package of retirement benefits as an incentive to early retirement. Mr. Fariss would have been eligible for these benefits had he remained employed and chosen to retire rather than continue working until his death. Whether Mr. Fariss would have elected early retirement, however, is necessarily speculative, and accordingly we do not consider these benefits in determining whether plaintiff has a claim for monetary relief. A similar refusal to indulge in speculation about discretionary promotions underlay this circuit's decision in Curl v. Reavis, 740 F.2d 1323, 1330 & n. 6 (4th Cir.1984)
 
 
 [6]
 Mary A. Dodgion, Lynchburg Foundry's Manager of Compensation and Benefits, offered in her affidavit the following undisputed evidence:
 "All employees are advised of their conversion options in the life insurance portion of their benefits booklets. I had several meetings with Mr. Fariss and his wife about his retirement; however, he never asked about life insurance and never expressed any desire to convert his life insurance coverage after termination of his employment."
 
 
 [7]
 Because the ADEA incorporates the enforcement "powers, remedies, and procedures" of the Fair Labor Standards Act (FLSA), 29 U.S.C. Secs. 211(b), 216 (except subsection (a)), and 217, the "amounts owing" under the ADEA are deemed to be the "unpaid minimum wages" or "unpaid overtime compensation" referred to in Sec. 216(b) of the FLSA, as 29 U.S.C. Sec. 626(b) indicates. Of course, the "amounts owing" under the ADEA and the relief available under the FLSA are not the same, but Congress's decision to link the two statutes is nonetheless relevant. This court has held that Congress intended to preclude any award of general damages for pain and suffering under the ADEA, and that reimbursement and reinstatement are sufficient to alleviate any injury from age discrimination. Slatin v. Stanford Research Institute, 590 F.2d 1292, 1295-96 (4th Cir.1979)
 
 
 [8]
 Even if fringe benefits were to be characterized as equitable in the sense of being discretionary, as the Eighth and Second Circuits have indicated in dealing with pension benefits under the ADEA, see Dickerson v. Deluxe Check Printers, Inc., 703 F.2d 276, 279 n. 2 (8th Cir.1983); Gibson v. Mohawk Rubber Co., 695 F.2d 1093, 1100 (8th Cir.1982); Geller v. Markham, 635 F.2d 1027, 1036 (2d Cir.1980), cert. denied, 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981); Cleverly v. Western Electric Co., 594 F.2d 638, 640 (8th Cir.1979), there is no reason to suppose that a monetary claim for fringe benefits would not survive death. Defendant, arguing that equitable claims do not survive, misleadingly cites authorities dealing only with injunctive relief. See Hamilton v. Rogers, 573 F.Supp. 452, 454 (S.D.Tex.1983); Mixon v. Grey Drug Stores, Inc., 81 F.R.D. 413, 414 (N.D.Ohio 1978). By contrast, monetary claims are ordinarily not mooted by death. See, e.g., Yablonski v. United Mine Workers, 459 F.2d 1201, 1202-03 (D.C.Cir.1972)
 
 
 [9]
 Where an employer chooses to act as insurer for its employees, as certain businesses do rather than paying increasing premiums, a different case may be presented. We need not and do not decide that question here
 
 
 [10]
 A payment made entirely by the employer directly to the employee is not a "collateral benefit" within the meaning of NLRB v. Gullett Gin Co., 340 U.S. 361, 364, 71 S.Ct. 337, 339, 95 L.Ed. 337 (1951) (holding unemployment compensation benefits collateral and exempt from offset in labor case). Collateral benefits are those received from a source distinct from the employer; they are not offset because they do not discharge an obligation of the employer, but serve an independent social policy. See Gullett Gin, 340 U.S. at 364, 71 S.Ct. at 339; EEOC v. Sandia Corp., 639 F.2d 600, 624-26 (10th Cir.1980)
 
 
 [11]
 Punitive damages are not available under the ADEA. Walker v. Pettit Construction Co., 605 F.2d 128, 130, modified on reh'g on other grounds sub nom. Frith v. Eastern Air Lines, Inc., 611 F.2d 950 (4th Cir.1979)