**EQUAL EMPLOYMENT OPPORTUNI-TY COMMISSION, Plaintiff–Appellee,**

v.

**SERVICE NEWS COMPANY, Defendant–Appellant.**

No. 89–2956.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 11, 1990.

Decided March 23, 1990.

Michael Murchison, Murchison, Taylor, Kendrick, Gibson & Davenport, Wilmington, N.C., for defendant-appellant.

John Boling Meuser, Sr. Trial Atty., E.E. O.C., Raleigh, N.C. (Charles A. Shanor, Gen. Counsel, Gwendolyn Young Reams, Associate Gen. Counsel, Lorraine Davis, Asst. Gen. Counsel, E.E.O.C., Raleigh, N.C., on brief), for plaintiff-appellee.

Before WIDENER and CHAPMAN, Circuit Judges, and HOFFMAN, Senior District Judge for the Eastern District of Virginia, sitting by designation.

CHAPMAN, Circuit Judge:

Service News Company appeals the district court's judgment that it unlawfully discharged an employee because of her pregnancy, and also appeals the award of back pay, medical expenses, and attorney's fees to the employee. We affirm in part, reverse in part, and remand for a recalculation of damages consistent with this opinion and for a reconsideration of the attorney's fee.

## I.

Service News Company is a distributor of periodicals and books in Wilmington, North Carolina. Its general manager, Leslie D. Heck, hired Nancy K. Phillips as a scanner operator on July 3, 1985. Phillips was eighteen years of age and her position with Service News was her first public employment. As scanner operator, Phillips had to lift boxes of magazines weighing in excess of 25 pounds. Heck considered Phillips to be a satisfactory employee.

Seeking to determine the cause of health problems, Phillips made several visits to the New Hanover Health Department. Two pregnancy tests administered during the course of visits on September 19 and October 3, 1985 were negative. Phillips was absent from work for medical reasons on part of October 21, all of October 22 and part of October 23, 1985. On each occasion, she communicated her absence to appropriate employees at Service News. On October 22, 1985, a pregnancy test administered to Phillips at the New Hanover Health Department was positive.

Phillips called Service News and asked the receptionist to inform Heck that she had tested positively for pregnancy. Later that day, Heck called Phillips' husband and left a message that he wanted to see Phillips. Prior to meeting with Phillips, Heck interviewed Robin Anderson and showed her Phillips' scanner job. That evening, Heck hired Anderson for the scanner job.

Phillips and Heck met at Service News on October 23. Heck claimed at trial that he called the meeting to discuss Phillips' absences and his having seen her at a video store, but neither topic was broached during the meeting. Instead, the focus of discussion made clear that Heck's primary reason for the meeting was to discuss Phillips' continued employment in light of her pregnancy. At this time, Heck repeatedly expressed concern about Phillips' pregnancy and the possibility of injury should she continue working. He recounted the experiences of two employees who had difficulties in continuing to work in other positions because of their pregnancies. Phillips informed Heck that her doctor had approved her continued employment. She expressed her desire to continue working and her financial need to do so. However, Phillips concluded that she was being discharged. Immediately after the meeting, she told two fellow employees that she had been fired because she was pregnant.

During the meeting, the parties also discussed the possibility of unemployment compensation and continued health insurance benefits. Heck suggested that Phillips might retain the company insurance for three months if she paid the premiums herself, and that after that period she might qualify for a non-group policy. Phillips made payments to Service News after her termination; however, the insurance company shortly advised her that she was not eligible to continue benefits and Service News later refunded the money she had paid in premiums. Phillips attempted to obtain other insurance to cover her pregnancy but was unable to do so because her pregnancy was a pre-existing condition.

Following her termination, Phillips looked through want ads for employment. Five months after her termination Phillips applied to work with the Piece Goods Shop

(Piece Goods), but was rejected because of her pregnancy. After that experience Phillips assumed that further efforts at obtaining employment while pregnant would be futile.

Phillips gave birth on June 24, 1986. She reapplied at Piece Goods on August 8, and began work there on August 11, 1986. She worked at Piece Goods until September 1986, but voluntarily quit her employment because transportation and child care costs exceeded what she could reasonably expect to earn. On December 9, 1986, she obtained employment with Williams Cleaners. She continued work there until mid-February 1987, at which time she again voluntarily quit her employment because the employer wanted to reduce her hours, and her expenses made part-time employment economically unfeasible. She did not work again until she was rehired by Service News on June 10, 1987.

During two periods of unemployment between September 1986, when she left Piece Goods, and June 1987, when she was rehired by Service News, Phillips continued to look for work. She submitted numerous applications for employment.

After her discharge, Phillips filed a charge of discrimination with the New Hanover Human Relations Commission (NHHRC). Phillips was assisted by counsel during the course of NHHRC's administrative process. Although Phillips was ultimately reinstated by Service News, she was unable to obtain complete relief in resolution of the charge. Therefore, the Equal Employment Opportunity Commission (EEOC) filed this action on March 7, 1988, alleging that Service News had discharged Phillips on account of her pregnancy in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–2(a) (1981). At the conclusion of a two-day trial, the district court ruled from the bench that Service News had violated Title VII by discharging Phillips on account of her pregnancy. The court awarded Phillips back pay in the amount of $12,059.34 and attorney's fees in the amount of $100.00, as well as attorney's fees to Richard Klein in the amount of $1,325.00. In a separate order, the court awarded Phillips reimbursement for medical expenses associated with her pregnancy in the amount of $2,791.91. Prior to the entry of judgment, Service News filed a motion to amend the judgment to delete the award of attorney's fees, which the district court denied.

## II.

■ Service News asserts error in several of the court's findings of fact. First, it argues that Heck did not discharge Phillips. Although Heck testified that he believed that Phillips agreed with his concerns and left his employ voluntarily, we find that there is ample evidence to support Phillips' and the court's conclusion that she was discharged. The issue rested in part on Phillips' credibility, which appellant does not contest. The court's finding that Phillips was discharged is not clearly erroneous.

■ Service News also contests the court's finding that Phillips was not pregnant on September 10, 1985, the date she enrolled in appellant's insurance plan. Had Phillips been pregnant on that date, she would not have received any medical benefits due to a pre-existing condition exclusion. The court's finding was not clearly erroneous in light of admitted medical records of negative pregnancy tests administered on September 19 and October 3, 1985.

■ Appellant is on firmer ground in its claim that the district court erred in computing the back pay award. Phillips gave birth on June 24, 1986. The lower court assumed that Phillips was able to return to work on July 24, 1986, and directed back pay to resume as of that date. However, Phillips did not actually return to work until August 11, 1986, when she began work at Piece Goods, and there is no contrary evidence in the record to justify the use of an earlier date. Therefore, the back pay award should be recalculated using August 11, 1986, as the earliest date that Phillips would have been able to return to work after the birth of her child. Back pay was not awarded for that period of time

following the birth during which Phillips would have been on unpaid leave from Service News.

## III.

Service News argues that the trial court committed further error by failing to make certain findings of fact. We do not agree that the issues presented required the court to make any additional findings, and find no error in this respect.

■ Service News contends that the court should have made a finding on the theory of constructive discharge, since the words "discharged" and "fired" were not used during the meeting between Phillips and Heck.[1] However, neither party proposed that theory at trial, and no evidence was presented in support of that theory. No specific words need be present to support a finding of actual discharge, and actual discharge rather than constructive discharge was appropriate to this case.

■ Appellant also complains of the lower court's failure to address the defense of business necessity, under which its otherwise discriminatory practice may be justified to protect the health of pregnant women and their unborn fetuses. While not limited to a single analytical framework, the affirmative defense of business necessity typically is raised in disparate impact cases. *See Wright v. Olin Corp.*, 697 F.2d 1172, 1185–86 n. 21 (4th Cir.1982). By contrast, this case was analyzed as an overt sex-discrimination claim or, alternatively, as a covert disparate treatment claim to which the analytical framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its

progeny applied.[2] Although "it is often appropriate to assess particular Title VII claims and defenses alternatively under different theories," *Wright v. Olin Corp.*, 697 F.2d at 1184 (citations omitted), we do not believe that the business necessity defense was applicable here. Therefore we find no error in the court's failure to make a finding on the issue.

■ We agree with the trial court's conclusion that Phillips made out a prima facie case of overt discrimination. To establish a business necessity defense, Service News had the burden to prove that significant risks of harm to Phillips and her unborn child made it necessary to discharge her. This burden could not have been satisfied by the evidence presented in this case, which was wholly of a subjective nature.

> Irrespective of the employer's subjective belief and motivation, the significance of the risk, the extent of its confinement to the unborn children of women as opposed to men workers, the consequent necessity of protective measures confined to women workers, and the effectiveness of the actual program for the intended purposes must be established by independent, objective evidence.

*Wright v. Olin Corp.*, 697 F.2d at 1190. In this case, the only evidence presented was Heck's subjective, good faith belief that Phillips should not continue to work, based upon his experience with two prior employees in different positions who had difficulties in continuing to work while pregnant. There was no objective, medical opinion evidence of any qualified expert[3] that a pregnant employee could not safely perform the job of scanner operator, without

1. Constructive discharge applies when an employer engages in a deliberate effort to pressure an employee into quitting, through creation of intolerable working conditions. *See Bristow v. Daily Press, Inc.*, 770 F.2d 1251 (4th Cir.1985), *cert. denied*, 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986).

2. A disparate impact case is one where a facially neutral practice is alleged to have a significantly discriminatory impact upon a Title VII protected group. *See Connecticut v. Teal*, 457 U.S. 440, 446, 102 S.Ct. 2525, 2530, 73 L.Ed.2d 130 (1982). Disparate treatment analysis more typically has

been applied to subjective or discretionary hiring and promotion decisions, although such decisions may also be analyzed under the disparate impact theory. *See Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988); *Mallory v. Booth Refrigeration Supply Co., Inc.*, 882 F.2d 908, 911–12 (4th Cir.1989).

3. Although Phillips' doctor stated that she was physically able to lift "up to 25 lbs.," he expressed no opinion on the possibility of harm should she lift more than that weight.

which the business necessity defense could not be established.[4] *Id.* Since the evidence presented was so clearly inadequate to establish business necessity, we find no error in the trial court's failure to make a finding on that defense.[5]

█ Finally, Service News argues that the district court erred in failing to address whether Heck offered to rehire Phillips prior to the date she was actually rehired, which would have tolled Service News' back pay obligation. Our review of the record reveals that the only evidence in appellant's favor was Heck's testimony that he told the initial NHHRC investigator, Carolyn Johnson, that he would have no problem rehiring Phillips. Heck does not suggest that he made a specific offer to Phillips, and both Johnson and another investigator testified that Heck made no direct offer to rehire Phillips. Phillips also testified that Heck did not offer to rehire her.

In *O'Neal v. Gresham,* 519 F.2d 803, 805 (4th Cir.1975), remand for additional findings was warranted because it was conceded that "something in the nature of other county employment had been tendered or discussed with the plaintiff and she either refused it or failed to pursue it." No such evidence exists here. At best, there is some evidence that Heck made an indirect offer of rehire to a third party. No remand is necessary because, assuming an offer was made to the investigator, it would not affect Phillips' back pay award because there is no evidence that the offer was ever communicated to Phillips.

## IV.

### A. *Back Pay*

Service News contests the award of back pay on the basis that Phillips' efforts to mitigate were insufficient to sustain the

award, and asserts that the court should have examined three discrete periods of time rather than looking at the back pay period as a whole. Although it may be useful to examine periods of unemployment separately from periods of employment, we decline to adopt a fixed rule that discrete periods of time must be examined to determine a back pay award.

█ Nevertheless, our review of the record persuades us that the district court erred in awarding back pay for the first five months of unemployment following Phillips' termination from Service News.[6] There was no evidence that Phillips made any applications prior to her first application at Piece Goods five months after leaving Service News, and Phillips testified that her only efforts during this period were looking through want ads. Looking through want ads for an unskilled position, without more, is insufficient to show mitigation, and the back pay award should accordingly be reduced.

█ Phillips did not look for work during her pregnancy after her initial application at Piece Goods. However, we uphold the award of back pay for that time period because Phillips' inaction was justifiably based upon her belief in the futility of further efforts during her pregnancy. In *Hayes v. Shelby Memorial Hosp.,* 546 F.Supp. 259, 266 (N.D.Ala.1982), *aff'd,* 726 F.2d 1543 (11th Cir.1984), an employee who believed that efforts to obtain employment would be futile because she was pregnant was refused back pay because she had no real basis for her belief and had made no attempts to obtain work. In contrast, Phillips attempted to obtain work from Piece Goods when she was five or six months pregnant and was rejected solely because she was pregnant. Her belief in the futili-

---

**4.** Indeed, following Phillips' discharge, another employee worked as a scanner operator until she was seven months pregnant.

**5.** Nor did the court err by failing to address the narrow, statutory bona fide occupational qualification (b.f.o.q.) defense, which is more commonly raised in overt discrimination cases. *See Wright v. Olin Corp.,* 697 F.2d at 1183–86. Ser-

vice News apparently did not raise that defense at trial and has not argued it on appeal.

**6.** Phillips testified that she made the first application to Piece Goods four or five months after leaving Service News. At argument before this court, appellee conceded that her first application was made five months after leaving Service News.

ty of further efforts was rooted in the factual context of her rejection by both Service News and Piece Goods.

Although appellant contends that Phillips' efforts to obtain employment at other times were inadequate to sustain an award of back pay, we uphold the remainder of that award. Phillips was employed between August 8 and September 7, 1986, at Piece Goods and between December 9, 1986, and mid-February 1987 at Williams Cleaners. There was credible evidence to support the district court's finding that Phillips quit working at both positions because of her inability to earn net wages for part-time work, given child care and transportation expenses. Phillips was rehired by Service News in mid-June 1987. There was evidence that Phillips made at least six applications in addition to those at Piece Goods and Williams Cleaners during periods of unemployment. We find no error in the trial court's conclusion that these efforts were sufficient to sustain an award of back pay.

We are similarly unpersuaded by Service News' argument that the back pay entitlement should be offset by Phillips' child care expenses. Appellant cites no authority for this argument, and Title VII itself expressly mentions reduction of a back pay award only for "[i]nterim earnings or amounts earnable with reasonable diligence." 42 U.S.C. § 2000e–5(g). Service News should not escape liability for back pay that it would have paid had Phillips remained employed, merely because Phillips would have used some of her paycheck to pay third parties for transportation costs or child care.

B. *Medical Benefits*

Appellant also contests the award of medical benefits under *Fariss v. Lynchburg Foundry,* 769 F.2d 958, 964–66 (4th Cir.1985). In *Fariss,* this court ruled that the widow of an employee who might have been wrongfully terminated could not recover the proceeds of a life insurance policy, but was limited to recovery of the insurance premiums. The holding in *Fariss* was based in part on the employee's failure to

mitigate his damages by purchasing comparable insurance. *Fariss* expressly declined to consider "the measure of damages had he earnestly attempted to procure substitute individual coverage and found insurance unavailable for a person of his age and health." *Id.* at 966. Unlike *Fariss,* here Phillips earnestly attempted to continue coverage with Service News and, when that failed, to procure substitute insurance. Phillips was unable to obtain other insurance because her pregnancy was a pre-existing condition which was excluded from coverage. Therefore, the measure of damages was properly calculated as the benefits which would have been paid, rather than the cost of the premiums. However, on remand, the amount of insurance premiums that Phillips would have paid should be determined and deducted from the award of medical expenses. We reiterate the *Fariss* rule that ordinarily a former employee may not recover insurance proceeds, but on the present facts which reflect a serious effort to obtain other insurance and the claimant's particular need caused by her pregnancy, an exception to the *Fariss* rule is justified.

C. *Attorney's Fees*

After her initial discharge from Service News, Phillips filed a charge of discrimination with the New Hanover Human Relations Commission, at which time she was assisted by counsel. The district court ordered Service News to pay attorney's fees in the amount of $1,325 to Richard Klein, a Legal Services attorney who represented Phillips in the administrative investigation. The court also awarded $100 to Phillips to reimburse her for attorney's fees she paid. Title VII provides that "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the *prevailing party,* other than the Commission or the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 2000e–5(k) (emphasis added). Although Phillips did not intervene as plaintiff in this action, we hold that she was nonetheless entitled to an award of a

reasonable attorney's fee as a "prevailing party."

Service News argues that the definition of "prevailing party" should include only a formally nominated plaintiff or defendant. We do not believe such a limited construction of the term "prevailing party" is warranted under Title VII. Although her failure to intervene as plaintiff is unusual, restricting the definition of "prevailing party" to exclude Phillips would clearly frustrate the purpose of the statute. Similar limitations have been rejected by the courts. The Supreme Court upheld the award of fees relating to state administrative proceedings brought pursuant to the deferral provisions of Title VII in *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980). We have previously held that attorneys need not serve as counsel of record at the time of trial to recover fees under Title VII. *Mammano v. Pittston Co.,* 792 F.2d 1242, 1245 (4th Cir.1986). The policies underlying the availability of attorney's fees support the award of fees in this instance as well. "Representation by a private attorney ... assures development of a complete factual record at the investigative stage and at the administrative hearing." *New York Gaslight Club,* 447 U.S. at 70, 100 S.Ct. at 2034. Requiring the claimant at state administrative proceedings brought pursuant to Title VII to intervene in a subsequent federal suit merely to obtain attorney's fees would serve no useful purpose. Such a requirement could only tax the parties' and judicial resources, and needlessly raise fees. Therefore, we uphold the award of fees to Phillips.

 However, upon careful review of the record we have determined that the award to Richard Klein should be reconsidered. The lower court calculated the fee based upon an hourly rate of $100 multiplied by the total claimed time of 13.25 hours. Discussion by the district court on the reasonableness of fee was limited to its statements that it had received and reviewed an affidavit by the attorney, and found the time to be "entirely reasonable." We do not approve of the brevity of the court's analysis. In *Barber v. Kimbrell's, Inc.,* 577 F.2d 216 (4th Cir.), *cert. denied,* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978), we held that courts must consider and discuss the twelve factors set forth in *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974), to determine a reasonable fee. Factors to be considered include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber,* 577 F.2d at 226 n. 28. As noted in *Daly v. Hill,* 790 F.2d 1071 (4th Cir.1986), these factors should be considered in determining the reasonable rate and the reasonable hours, which are then multiplied to determine the lodestar figure which will normally reflect a reasonable fee. *See Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 1544, 79 L.Ed.2d 891 (1984).

From the record, factors (3), (4), (6), (7), (9), (10), and (12) do not seem to affect the fee in this case. However, several of the remaining factors militate in favor of reducing the number of hours. For instance, the time and labor expended were minimal; the record reveals that the services relate primarily to telephone conversations and a few letters. Since Phillips did not attempt to intervene as plaintiff, her attorney is clearly not entitled to any fee for services in connection with the trial. Appellee does not contend that Klein worked on any novel or difficult legal questions, nor does the number of hours claimed suggest a complex case. Rather, since the NHHRC had

issued a determination of reasonable cause prior to the time Klein became involved in the case, the largest block of Klein's time was devoted to telephone conversations with Phillips regarding the status of her case and settlement negotiations. Some of the claimed time appears unreasonable. For example, 2.85 hours out of the 13.25 hours claimed was spent on various preparations to claim the fee. The expenditure of over twenty percent of the claimed time on fee preparation would appear to be unreasonable under the circumstances.

In addition, Phillips' interests were simultaneously represented by counsel for the EEOC during much of the period for which Klein now claims compensation. Although simultaneous representation by the EEOC does not alone eliminate the possibility for a private attorney's fee during that period, the real potential for duplicative or unnecessary work should not be disregarded.[7] Other factors should be carefully scrutinized where there is dual representation. For example, although Phillips was reinstated at Service News during the period of Klein's representation, Klein's contribution toward that result was contested.[8] The only time entry supporting any direct effort by Klein to obtain Phillips' reinstatement with Service News was a single telephone conversation to counsel for Service News lasting four tenths of an hour. Finally, Klein's professional relationship with Phillips consisted largely of brief telephone conversations. We remand the issue of the attorney's fee to the district judge for reconsideration of the *Barber v. Kimbrell's* factors.

## V.

We find no error in the district court's factual findings that Heck discharged Phillips and that Phillips was not pregnant on the date she enrolled in Service News' insurance plan. Also, we find no error in the trial court's failure to make findings on issues not properly raised before it or which would not have affected the award. However, the back pay award should be recalculated using August 11, 1986, as the earliest date that Phillips would have been able to return to work after the birth of her child.

In addition, no back pay should have been awarded for the first five months of unemployment following Phillips' termination from Service News, since Phillips made no real efforts to mitigate her damages during that period. With respect to medical benefits, we affirm the district court's ruling that the appropriate measure of damages is the amount of benefits which would have been paid, but remand for determination and deduction of the amount of premiums that Phillips would have paid. Finally, we remand the award of attorney's fees for reconsideration.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

**7.** Under the statute, the EEOC is not entitled to recover attorney's fees. Proper analysis of the *Johnson* factors should curb any abuse which might occur if private attorneys could be used to circumvent the statute by collecting fees for the same work for which EEOC attorneys may not be compensated.

**8.** Before this court, the counsel for Service News described Klein's role in Phillips reinstatement as "peripheral." Phillips was simultaneously represented by EEOC staff when she was reinstated. Appellee appeared to concede that Phillips' reinstatement was achieved only after a conference, to which the time record submitted by Klein makes no reference.