**Stephen A. SPOSATO, Administrator, Estate of Jody Jones Sposato, Plaintiff–Appellant,**

**v.**

**ELECTRONIC DATA SYSTEMS, CORP., David Wire, Defendants– Appellees.**

**No. 98–16573.**

United States Court of Appeals, Ninth Circuit.

Submitted March 23, 1999.[1]

Decided Aug. 26, 1999.

---

1. The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Edwin L. Currey, Law Office of Edwin L. Currey, Lawrence R. Katzin, Bronson, Bronson & McKinnon, San Francisco, California, for the plaintiff-appellant.

Patricia M. Lucas, Fenwick & West, Palo Alto, California, for the defendants-appellees.

Before: GOODWIN, LEAVY, and THOMAS, Circuit Judges.

GOODWIN, Circuit Judge:

This appeal presents a narrow question of California law: On stipulated facts, what is the proper measure of damages where an employer is liable to a former employee for wrongful termination under the state Fair Employment and Housing Act ("FEHA"), part of the back pay and benefits package includes a life insurance policy, and the employee is killed during the back pay period? We have jurisdiction under 28 U.S.C. § 1291, and hold that on the unusual facts of this case, the employer is liable for the face value of the employer-provided policy, less the proceeds received under the substitute policy obtained by the employee in an effort to mitigate the damages caused by the loss of her employment benefits.

## BACKGROUND

This action began in California state court in 1992 when Jody Sposato, who had been employed by Electronic Data Systems (EDS), sued her former employer for wrongful discharge under California law. The case was removed to federal court on diversity grounds, and the parties engaged in extensive settlement negotiations. During the pendency of the proceedings before the district court, Jody Sposato was accidentally killed and her husband was substituted as plaintiff. The bulk of the factual issues in this case were resolved by stipulation of the parties, but when the case came before this panel in 1997, we remanded the case to the district court to address a fact question not resolved by the stipulation. *See Sposato v. Electronic Data Sys., Corp.,* 111 F.3d 138, 1997 WL 196733 (9th Cir.1997) (unpublished disposition).

With respect to the narrow issue now before this court, the relevant and undisputed facts are: (1) Jody Sposato was wrongfully terminated from her employment at EDS; (2) under the FEHA and the terms of the settlement agreement signed by the parties, EDS was liable to Ms. Sposato for back pay, which included a life insurance policy with a double indemnity provision; (3) the back pay period began with her employment termination and ended with her death; (4) the life insurance policy provided by EDS would have been in effect at the time of Ms. Sposato's death, but for her wrongful termination; (5) Ms. Sposato fully mitigated her damages by purchasing a substitute insurance policy, even though the policy she was then able to purchase did not include a double indemnity provision.

## DISCUSSION

Ms. Sposato's estate brought this action seeking to obtain from EDS the face value of the life insurance policy that would have been in effect at the time of Ms. Sposato's death, but for her wrongful termination. EDS, by contrast, contends that Ms. Spo-

sato's estate is entitled only to the value of the premiums that would have been paid to provide the insurance policy. EDS advances two theories in support of its position, and we examine each in turn.

## I. Proper Measure of Damages

■ Federal courts have considerable discretion to fashion remedies that provide "the most complete relief possible" to victims of workplace discrimination who bring an action against their employer under Title VII. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (noting that Title VII "is intended to make the victims of unlawful discrimination whole," and that the Act "requires that persons aggrieved by the consequences and effects of the unlawful employment practice be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination."); *Galindo v. Stoody Co.*, 793 F.2d 1502, 1517–18 (9th Cir.1986) (noting that the cash equivalent of medical or life insurance premiums that would have been paid by an employer is not necessarily an accurate measure of plaintiff's damages). California courts have adopted a similar approach in wrongful termination cases brought under state law. *See, e.g., City and County of San Francisco v. Fair Employment and Housing Comm'n*, 191 Cal.App.3d 976, 985, 236 Cal.Rptr. 716 (Cal.Ct.App.1987) (recognizing that the objectives and purposes of the FEHA and Title VII are identical, and observing that California courts have often turned to federal Title VII authority to interpret provisions of the FEHA); and *see generally DFEH v. Madera County*, FEHC Dec. No. 90–03 (1990); *DFEH v. Rayne Water Conditioning*, FEHC Dec. No. 84–01 (1984).

■ Although the precise question at bar has not been addressed in this circuit or by the state courts, we believe that the California courts would apply their traditionally broad remedial approach to the unusual facts of this case. Accordingly, the proper measure of Ms. Sposato's damages is the face value of the employer-provided life insurance policy that would have been in effect but for the wrongful termination, less any proceeds received by Ms. Sposato's estate from the pay-out on the substitute life insurance coverage.

Appellee's contention that *Fariss v. Lynchburg Foundry*, 769 F.2d 958 (4th Cir.1985), should control here is unpersuasive. In *Fariss*, as in this case, the complainant brought a wrongful termination suit against his former employer but died during the pendency of the proceedings. *Id.* at 961. Mr. Fariss' wife was substituted as plaintiff, but the district court granted summary judgment in favor of the employer on the wrongful termination claim. *Id.* On appeal, a panel of the Fourth Circuit considered whether Mrs. Fariss would be able to recover any damages, assuming that she could prove that her husband had been wrongfully terminated. *Id.* at 963.

As in this case, Mrs. Fariss sought to recover the face value of an employer-provided life insurance policy that would have been in effect but for her husband's allegedly wrongful termination. *Id.* The court held that the "insurance coverage, not the proceeds, is the benefit for which the employer must be held liable," and that the proper measure of the Fariss' damages would be the amount of the premiums the employer would have paid had the termination not occurred. *Id.* at 965–66. However, the court stated that "[b]ecause there [was] no evidence here that Mr. Fariss attempted to obtain any substitute coverage, plaintiff can recover only the premiums the employer would have paid." *Id.* at 966.

We believe that Fariss is inapposite here because, while the complainant in *Fariss* chose not to self-insure after his termination, the parties have stipulated in this case, pursuant to arbitration, that Ms. Sposato mitigated her damages fully by obtaining substitute life insurance coverage. The employer should bear the economic consequences of its choice to terminate Ms. Sposato's employment and her life insurance policy.

## II. California's Survival Statute

■ EDS contends that Ms. Sposato's estate cannot recover the face value of the employer-provided life insurance policy because California law limits recovery in survival actions to "the loss or damage that the decedent sustained or incurred before death." Cal.Civ.Proc.Code § 377.34.[2] EDS would have this court deny Ms. Sposato's estate the relief set forth above because they contend that, during her life, Ms. Sposato would only have been entitled to recover the premiums paid to obtain a substitute life insurance policy. To resolve this issue, we must determine the specific nature of the "loss or damage" suffered by Ms. Sposato prior to her death where her employer would have provided a life insurance policy with a double indemnity provision but for her wrongful termination.

California courts have not addressed the unusual issue presented by this case, and the legislative history of the survival statute does resolve the issue clearly. In 1949, California enacted a comprehensive survival statutes for personal tort and wrongful death actions. *See generally Sullivan v. Delta Air Lines, Inc.,* 15 Cal.4th 288, 297–302, 63 Cal.Rptr.2d 74, 935 P.2d 781 (1997). In an attempt to clarify and modernize the law with respect to the survivability of other causes of action, the California legislature revised the statutes in 1961, and again in 1992. *See id.;* 3 Witkin California Procedure § 67 (4th ed.1996).

As presently enacted, Section 377.34 provides that virtually all causes of action survive a decedent's death, but places several limitations on the damages recoverable from or by a decedent's estate. For example, damages for pain and suffering by a decedent are expressly excluded, as are other damages not "sustained or incurred [by the decedent] before death."

Cal.Civ.Proc.Code § 377.34. However, surviving relatives of the decedent may bring a wrongful death action seeking "to recover pecuniary losses cause by the death, including pecuniary support the decedent would have provided them, and noneconomic damages for being deprived of the decedent's society and comfort." Cal.Civ. Proc.Code § 377.60; *Garcia v. Superior Court,* 42 Cal.App.4th 177, 186–87, 49 Cal. Rptr.2d 580 (Cal.Ct.App.1996).

Together, these statutory provisions preclude double recovery for the survivors of a decedent in cases where the decedent's injury is both the foundation of the decedent's cause of action in tort and the cause of the decedent's death, *Garcia,* 42 Cal.App.4th at 186–87, 49 Cal.Rptr.2d 580, and also preclude recovery of noneconomic damages deemed to be personal to the decedent, *Williamson v. Plant Insulation Co.,* 23 Cal.App.4th 1406, 1417–18, 28 Cal. Rptr.2d 751 (1994). It appears that the California Legislature was focused primarily on these two issues when Probate Code § 573, an earlier version of the survival statute, was enacted in 1961. *See* 3 California Law Revision Commission Reports Recommendations and Studies, Section F at 21–23 (1960) (considering the limitation on damages such as pain and suffering, loss of future earnings and punitive damages); *see also Sullivan,* 15 Cal.4th at 299, 63 Cal.Rptr.2d 74, 935 P.2d 781 (referring to the report "as evidence of the Legislature's intent in adopting the provisions thus proposed."). The current version of the statute is essentially unchanged.

Consistent with the apparent intent of the Legislature, California courts have interpreted Section 377.34 to prohibit an award of speculative, personal or noneconomic damages such as pain and suffering, emotional distress, and loss of future earnings. *See Sullivan,* 15 Cal.4th at 299, 63 Cal.Rptr.2d 74, 935 P.2d 781 (quoting *Wil-*

---

**2.** The provision reads, in its entirety,

In an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable are limited to the loss or damage that the decedent sustained or

incurred before death, including any penalties or punitive damages or exemplary damages that the decedent would have been entitled to recover had the decedent lived, and do not include damages for pain, suffering or disfigurement.

*liamson*, 23 Cal.App.4th at 1406, 28 Cal. Rptr.2d 751); *Garcia*, 42 Cal.App.4th at 186, 49 Cal.Rptr.2d 580 ("Once deceased, the decedent cannot in any practical way be compensated for his injuries or pain and suffering.").

We believe that the facts of this case put Ms. Sposato's loss outside the category of losses prohibited by California's survival statute. As a consequence of her unlawful termination, Ms. Sposato's employer wrongfully denied her a life insurance policy containing a double indemnity provision. This loss predated her death by several years. The benefit of the life insurance policy was never meant to inure to Ms. Sposato herself, but was always intended to benefit her family. The amount of the payout in the event of her untimely death was certain throughout the course of Ms. Sposato's dispute with her employer. Therefore, the damages sought by Ms. Sposato's estate are not speculative or personal to the decedent, nor did the loss suffered by the decedent occur after her death. Indeed, the parties stipulated that the insurance coverage was to have been part of the back pay to which she was entitled, within the context of the litigation that was pending when she died.

In light of the unusual factual circumstance of this case, we doubt that California courts would apply the survival statute so as to preclude the estate's recovery of the lost insurance benefit.

## CONCLUSION

For the reasons set forth above, we reverse the judgment of the district court and remand with instructions to enter judgment in favor of Ms. Sposato's estate.

REVERSED AND REMANDED.

LEAVY, Judge, dissenting.

I respectfully dissent. First, neither California law nor federal law compels the result reached by the majority. We did not consider life insurance proceeds as a possible measure of damages in *Galindo v. Stoody*, 793 F.2d 1502, 1517 (9th Cir.1986). The Fourth Circuit, which has directly considered this issue, has held that it is the life insurance premium, not the proceeds, which is the proper measure of damages in a wrongful termination suit. *See Fariss v. Lynchburg Foundry*, 769 F.2d 958, 965 (4th Cir.1985).

Second, the majority misconstrues California's survival statute, Cal.Civ.Proc.Code § 377.34, which limits the damages recoverable by a decedent's personal representative "to the loss or damage that the decedent sustained or incurred before death." Under the plain language of section 377.34, Mr. Sposato is limited to the loss that Ms. Sposato suffered before her death, that is, the life insurance premiums.

Third, the result reached by the majority makes bad public policy. As a general rule, the discharge of an employee, even if wrongful, should not transform the employer into a life insurer. Unlike medical insurance, life insurance benefits not the employee, but his or her survivors, and may be obtained from various sources in amounts that are entirely within the employee's discretion. As a result of our holding, prudent employers may well cease to offer group life insurance as a benefit of employment. *See Fariss*, 769 F.2d at 965.

I would affirm the district court's well-reasoned opinion.