TEXTILE WORKERS UNION OF AMERICA, LOCAL No. 513,
Dewey Lewis, Clyde Lee and E. M. Finley,
Complainants-Appellees,

*v.*

BROOKSIDE MILLS, INC., Defendant-Appellant.

(*Knoxville*, September Term, 1957.)

Opinion filed December 6, 1957.

Rehearing Denied February 6, 1958.

E. H. RAYSON and R. R. KRAMER, Knoxville, KRAMER, DYE, McNABB & GREENWOOD, Knoxville, of counsel, for appellant.

CREEKMORE, BUHL & THOMSON, MARNE S. MATHERNE, Knoxville, for appellees.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

This is a suit brought to recover vacation pay allegedly due under a collective bargaining agreement. The suit was brought by the parties named in the caption, *supra,* and is a class suit in behalf of the individual complainants and all others similarly situated. The defendant is a Delaware corporation.

The case was heard on the pleadings and a stipulation of facts. Hence the appeal directly to this Court. The Chancellor decreed in favor of the complainants and the appeal is by the defendant.

The material facts established by said stipulation are as follows:

(1) Defendant Mill was engaged in the business of weaving cloth in Knoxville, Tennessee.

(2) On October 29, 1950, the Mill and the Textile Workers of America, *supra,* entered into a collective bargaining agreement. It was provided therein that the agreement would remain in effect for two years and for each period of two years after October 29, 1952, unless terminated by either party thereto. No notice of termination was given by either of the parties, hence the agreement became renewed for two-year periods beginning October 29, 1952, and October 29, 1954.

(3) Article XVI of the agreement relates to vacations and provides as follows:

"Article XVI

"Vacations

"Section 1. All employees who on June 1, 1950, and on June 1 of each succeeding contract year, have con-

tinuous service with the Employer will be paid vacation pay according to the following schedules:

"Those employees with 6 months or more continuous service—2% of their annual earnings.

"Those emloyees with 1 year or more continuous service—2% of their annual earnings.

"Those employees with 5 years or more continuous service—4% of their annual earnings.

"Section 2. The week of July 4th will be designated as vacation week unless the Employer gives the Union notice of a change in this date at least 30 days prior to the week of July 4th.

"Section 3. Where mutually satisfactory arrangements can be made, an employee may take his earned vacation at some time other than that named above.

"Section 4. All complaints regarding vacation pay must be made within 30 days of the date of payment or else will be considered waived and abandoned. Employees not on the payroll on the date of payment will be given 2 weeks from the date of their return to make such complaints."

(4) During the period the collective bargaining agreement of October 29, 1950, and renewals thereof were in effect Brookside paid vacation pay to employees in active employment and to employees who were temporarily laid off at the time vacation pay for the year became payable and who were expected to be recalled. During the same period Brookside had not paid vacation pay to those persons whose services were terminated by dis-

charge, voluntarily quit or otherwise prior to the time for vacation pay.

(5) Because of economic conditions Brookside found it impossible to operate its business successfully and beginning in the latter part of 1955, Brookside started a gradual close down of operations, stopped taking new orders and commenced releasing its employees. This process of closing down was completed in March, 1956, except for isolated cases. At that time the company ceased all manufacturing operations, and it became evident that the company would not resume its operations. On May 24, 1956, a formal written notice was given to the employees, including those released theretofore, confirming their termination of employment and that the company would not resume operations.

(6) The individual complainants Dewey Lewis, Clyde Lee and E. M. Finley were employees of Brookside who were terminated on January 13, 1956, February 9, 1956, and March 20, 1956, respectively. They were terminated because of Brookside's decision to discontinue its operations.

As originally commenced this suit was for vacation pay for the period of from October 29, 1955, through the dates the individual complainants were terminated—that is, for vacation pay for the second year of the two-year collective bargaining agreement in effect at the time Brookside closed. Subsequently, and though the employees had received their annual vacation pay in July, 1955, the original bill was amended so as to seek vacation pay based on wages earned from July, 1955, through October 29, 1955.

The stipulation was accordingly amended so that the issues to be decided were stipulated to be as follows:

"(1) Are those employees of the company who were within the bargaining unit and whose employment was terminated prior to June 1, 1956, entitled to vacation pay by virtue of the terms of the collective bargaining agreement?

"In the event the foregoing issue is answered 'Yes' then in such event the following issues must be determined.

"(2) Are the employees of the company entitled to vacation pay based upon the amount that each of such employees had earned from and after October 29, 1955, until termination of their employment?

"(3) Are the employees of the company entitled to vacation pay based upon the amount that each of such employees had earned from and after July 7, 1955, to and including October 28, 1955?"

There are two assignments of error. The first is that the Chancellor erred in holding that the complainants were due and entitled to recover vacation pay under the collective bargaining agreement.

It is the insistence of the appellants that the provision for the payment of vacation pay means that the individual must have been an employee on June 1, 1956, and have continuous service as of that date; that since none of these employees were in the employ of the company at that time, having been discharged prior to that date, are not entitled to vacation pay; i.e., that June 1 of each year was the eligibility date for vacation pay.

On the other hand, it is insisted by the appellees that June 1 was not an eligibility date but, as held by the Chancellor, was a date fixed for a measure of time within which to figure accumulated compensation earned by the employees in the period of their service. Further, that to so construe it as an eligibility date under the language of the contract is to create a condition precedent and to inject a provision for forfeiture when neither one of these is permitted by the language used by the parties and as construed by them in their dealings with one another.

The parties are in agreement that vacation pay is in effect additional wages or compensation and that the right to receive same is entirely dependent upon contract.

Appellant relies upon numerous cases cited in its brief wherein it has been held that the employee could not bring himself within the eligibility requirements stated by the terms of the contract. Since the language in none of these cases is identical with or the same in substance as the language in the instant case, it is not deemed helpful to refer expressly to those cases. Neither do the appellees cite any case that is either identical or in substance the same in language. Therefore, the best the Court can do is to interpret this contract in a way that appears to be justified by the language used as well as by the construction put upon same by the parties themselves.

This provision cannot be said to be free of ambiguity. First, it will be noted that it does not say "all who are employees on June 1" but says "all employees who on

June 1'', etc.; nor does it require that the service be continuous immediately up to, or next preceding, or some similar expression, as appears in the cases cited on page 22 of appellant's printed brief. It is equally susceptible of the construction that the continuous minimum service of 6 months could be at any time within the year from June 1 to June 1. If, therefore, in the face of this ambiguous language we should hold that an employee who has put in at least 6 months continuous time may be deprived of his vacation pay by being permanently terminated by the employer a few days short of the date of June 1 through no fault of the employee, then we would be reading into the contract a provision for a forfeiture which does not exist.

While we agree with appellant that if the language of the contract is clear in its meaning and the employee fails to bring himself within its terms, no court should re-write the contract. On the other hand, where there is room for construction, as we think there is in this case, the contract should be construed so as to meet the justice and equities of the circumstances of the parties to the contract.

Under the stipulation, para. 4 *supra*, the spirit of the parties to the contract is reflected in that the appellant paid vacation pay to employees who were temporarily laid off at the time vacation pay for the year became payable and on the other hand did not pay those persons whose services were terminated through the fault or voluntary action of the individual.

We are, therefore, of opinion that fair dealing and common justice require that we affirm the decree of

the Chancellor in holding that these complainants are entitled to vacation pay.

The second and only other assignment of error is that the Chancellor erred in holding that the complainants were due to recover vacation pay for wages earned from July 7, 1955, to October 29, 1955.

Since the vacation pay period ran from June 1 to June 1 and since these employees had not received any vacation pay since July 7, 1955, we are of opinion that the Chancellor correctly held that they are entitled to recover for vacation pay from July 7, 1955, to the date of their discharge.

The decree of the Chancellor is in all things affirmed with costs.