Edith JONES, et al., Plaintiffs,

v.

KAYSER–ROTH HOSIERY, INC., Defendant.

No. Civ. 3–89–545.

United States District Court, E.D. Tennessee, N.D.

Oct. 25, 1990.

As Amended Nov. 21, 1990.

Thomas M. Hale, E.H. Rayson, Kramer, Rayson, McVeigh, Leake & Rodgers, Knoxville, Tenn., J. Polk Cooley, Cooley, Simmons & Cooley, Rockwood, Tenn., Richard K. Evans, Kingston, Tenn., for plaintiffs.

Martin N. Erwin, Smith, Helms, Mulliss & Moore, Greensboro, N.C., D. Michael Swiney, Paine, Swiney and Tarwater, Knoxville, Tenn., for defendant.

## MEMORANDUM AND ORDER

ROBERT P. MURRIAN, United States Magistrate.

This case is before the undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73(b), Federal Rules of Civil Procedure, for all further proceedings. The question currently before the court concerns the appropriate contents of the Notice to be sent to members of the plaintiff class explaining their rights in accordance with the Judgment entered in this case on July 20, 1990, and requesting information in an effort to calculate damages. The issues encom-

passed by this question require a determination of the following:

1. The appropriate benefits and the method of calculation;
2. The number of business days for which back pay is appropriate;
3. The members of the plaintiff class entitled to recover damages; and
4. Whether the defendant is entitled to a credit for vacation pay actually paid and wages paid for hours not worked on June 26, 1989.

## I. BENEFITS

29 U.S.C. § 2104(a) provides that

(1) Any employer who orders a plant closing or mass layoff in violation of section 2102 of this title shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff for—

. . . . .

(B) benefits under an employee benefit plan described in section 1002(3) of this title, including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment loss had not occurred.

. . . . .

(2) The amount for which an employer is liable under paragraph (1) shall be reduced by—

. . . . .

(B) any voluntary and unconditional payment by the employer to the employee that is not required by any legal obligation; . . . .

There is no dispute that Kayser–Roth Hosiery, Inc., ("KR") provided the following benefits to its employees:

Vacation

Medical Insurance
Life Insurance
Savings Plan
Personal Accident Insurance
Wage Retirement Plan
Weekly Disability Insurance

[Docs. 53 and 54]. Similarly there is no dispute that plaintiffs are not entitled to recover any damages with regard to life insurance,[1] personal accident insurance,[2] weekly disability insurance benefits,[3] or vacation pay.[4]

Finally, the parties have agreed upon the manner of calculating the benefits due plaintiffs with regard to the Savings & Wage Retirement Plans. The defendant has prepared a schedule showing the contribution it would have made for each class member who participated in the savings plan [*see* Doc. 54, Exh. 3]. The defendant has also agreed to pay, and plaintiffs have agreed to accept, an additional one percent of their respective back pay damages in satisfaction of the value of the Wage Retirement Plan [*see* Doc. 54].

■ The medical insurance benefit and how it is to be valued is, however, at issue. Defendant contends that it provided group medical insurance to its employees; that KR's group medical plan was totally self-insured; that KR paid no premiums for medical coverage for its employees; that where an employer is self-insured, the relevant factors weigh against awarding an employee the amount of premiums paid for coverage; that to award the plaintiffs the actuarial cost to defendants of maintaining this insurance would result in a windfall to the plaintiffs; and that there is no reason why plaintiffs should recover a payment they would not otherwise have received or why the defendant should incur an expense it would not otherwise have incurred [*see* Doc. 54].

---

1. Life insurance coverage extended for 30 days after termination; thus, plaintiffs lost no life insurance benefits during the period of violation.

2. Personal Accident Insurance was an option made available to employees; however, KR did not contribute anything to this plan.

3. Plaintiffs do not contend that they are due any weekly disability insurance benefits.

4. The only dispute with regard to vacation pay is whether the defendant is entitled to a credit for some of the vacation pay it paid to its employees. None of the plaintiffs claim that they are entitled to additional vacation pay.

Plaintiffs contend that the court's reasoning for allowing recovery of the "value" of the medical insurance was the case of *Fariss v. Lynchburg Foundry*, 769 F.2d 958 (4th Cir.1985); that *Fariss* measures the "value of being insured" as the cost to the employer in premiums paid; and that it, therefore, follows that the "value of being insured" in the case of an employee whose employer is self-insured is the actuarial cost (cost per employee of the total insurance program) to the employer.

The undersigned has previously found that plaintiffs are entitled to "recover the value of any benefits they would have received during the period of violation (*i.e.*, the premiums paid for said benefits), and for any medical expenses incurred during the violation period which would have been covered." [Doc. 45 at p. 39]. At the time the foregoing finding was made, I was not aware that the defendant's medical insurance program was self-insured. This does not, however, change the fact that the statute states that as part of their damages plaintiffs may recover for benefits under an employee benefit plan, 29 U.S.C. § 2104(a)(1)(B); and that, therefore, plaintiffs are entitled to recover the value or cost of such benefits. *See* Conference Report on H.R. 3, H.R. Report No. 100–576, 100th Congress, 2nd Session at p. 1051, U.S.Code Cong. & Admin.News 1988, pp. 1547, 2084 ("The employer would be liable for back pay for each day of the violation plus *the cost of related fringe benefits* for each day of the violation...."). In other words, the fact that KR chose to act as insurer for its employees does not reduce the value of the plaintiffs' medical insurance benefits to zero. The question is not whether the plaintiff class is entitled to an award with regard to the medical insurance benefit, but how to calculate the value of this fringe benefit. The gist of the defendant's contention is that a value is to be placed on this benefit only if a class member incurred a covered medical expense during the violation period. It is my opinion that this contention is erroneous. Any class member who incurred a covered medical expense is entitled to and *will* recover that expense, *in addition to* the value of

the benefit itself. 29 U.S.C. § 2104(a)(1)(B). Plaintiffs' insurance policies were part of their compensation for employment and they had value to all plaintiffs. The rights of all plaintiffs were violated when the defendant failed to give the notice required by the WARN Act and I find no support in the statute or the legislative history for the argument to be made that only those plaintiffs who incurred some covered medical expense during the violation period should be allowed to recover the value of the medical insurance benefit. The value of the plaintiffs' medical insurance benefits is a part of *every plaintiffs'* back pay calculation.

I find that the cost to KR as set forth in Doc. 54, Exhibit 1, is a reasonable method for calculation of the value of the medical insurance benefit in light of the fact that KR was a self-insurer of this benefit. *See Green v. United States Steel Corporation*, 640 F.Supp. 1521, 1529–1533 (E.D.Pa.1986), *modified on other grounds*, 843 F.2d 1511 (3d Cir.1988) (In an employment case brought by a class of black applicants who were denied positions, the Court held that the cost to the defendant (a self-insurer) was a fair and reasonable measure of the value of the defendant's insurance benefits to the plaintiffs). The *Fariss, supra*, court did not decide whether the proceeds of an insurance policy is the proper measure of the value of that policy in a case "[w]here an employer chooses to act as insurer for its employees, ... rather than paying increasing premiums, ..." 769 F.2d at 965 n. 9. According to the statute at issue in this case, a successful plaintiff is entitled to recover, as part of his or her damages, the cost of medical expenses incurred during the period of violation which would have been covered absent the employer's violation. 29 U.S.C. § 2401(a)(1)(B). A successful plaintiff is *also entitled* to recover the value of any benefits under an employee benefit plan described in 29 U.S.C. § 1002(3). If Congress intended for plaintiffs to recover damages with regard to a medical insurance plan *only* if a covered medical expense was incurred, Congress would not have provided for recovery of

*both* medical expenses incurred and the value or cost of the benefit itself. For this reason and for all of the reasons set forth in the Memorandum Opinion filed in support of the Judgment entered July 20, 1990 [Doc. 45], it is my opinion that for purposes of interpreting the WARN Act, the fact that an employer acts as insurer with regard to medical insurance does not alter the fact that a successful plaintiff under this Act is entitled to recover as part of his or her back pay, the value of medical insurance as well as other benefits provided under an employee benefit plan as described in 29 U.S.C. § 1002(3).

## II. PAYMENT FOR JUNE 26

■ The parties disagree as to the number of days for which back pay is appropriate. The defendant contends that the appropriate number of business days is eighteen, while the plaintiffs contend that they are entitled to damages for nineteen business days. All parties contend that May 30, 1989, is not to be counted and that the count begins on May 31, 1989. The parties disagree, however, as to whether June 26, 1989, is to be counted as a day of violation.

> The legislative history explains that
> an employer which violates the notice provisions of section 6403 is liable for back pay and a civil fine for "each day of violation." The Conferees wish to clarify that "each day of violation" is limited to the requisite notice period.... ("Violation period" refers to the period of time after a shutdown or layoff in violation of this Act, and extends for the number of days that notice was required but not given.)

Conference Report on H.R. 3, H.R. Report No. 100–576, 100th Congress, 2nd Session at p. 1052 (April 20, 1988), U.S.Code Cong. & Admin.News 1988, p. 2085.

The undersigned found that "it was reasonably practicable for KR to issue notice of the mass layoff or plant closure ... on May 30, 1989[;] ... that between May 30, 1989, and June 26, 1989, when notice was actually given, the defendant was in violation of the WARN Act and that plaintiffs are entitled to be compensated according-

ly." [Doc. 47 at 30–31]. According to the Congressional record, the days constituting the violation period are not to be counted in accordance with Rule 6, Fed.R.Civ.P. Rather and very simply, it is necessary to count the days that notice was required but not given. Applying the foregoing to the facts of this case as I have found them, notice was required and not given from and on May 30, 1989, until and including June 25, 1989, for a total of 27 calendar days. Notice was given on June 26, 1989; thus, June 26 may not be counted as a day of violation. To the extent that this is inconsistent with the Order directing entry of Judgment and the Judgment entered in this case, said Judgment [Doc. 47] and Order [Doc. 46] are in error. Accordingly, said Judgment and Order shall be, and hereby are, corrected to reflect the foregoing. Rule 60(a), Fed.R.Civ.P.

Once the number of days during which notice should have been but was not given has been determined, the legislative history instructs the court to count forward from the date of shutdown the number of days constituting the period of violation (*i.e.,* 27 calendar days in this case). Conference Report, *id.* at 1052, U.S.Code Cong. & Admin.News 1988, p. 2085. Twenty-seven calendar days from and excluding June 26, 1989, extends to July 23, 1989, which time period encompasses 19 business days.

For all of the reasons stated above, I find that the plaintiffs are entitled to back wages for nineteen business days.

## III. CALCULATION OF BACK PAY

Defendant contends that there are three groups of employees for whom back pay must be calculated: (1) employees laid off on June 26; (2) employees laid off after June 26; and (3) employees laid off before June 26. Specifically, defendant contends that the basic calculation of back pay for employees laid off on June 26 should be the following:

> 19 (days constituting the period of violation) × 8 × employee's hourly rate of pay, less any credit for severance pay, extra vacation pay, and pay for hours not worked.

The plaintiffs do not object to the defendant's method of calculation with the exception of objections to some of the credit claimed by defendant, which objections will be addressed in Part IV of this Memorandum and Order.

Defendant further contends that back pay for employees laid off after June 26 should be calculated as follows:

19 (period of violation days) less number of days of actual notice × 8 × employee's hourly rate of pay, less any credit due defendant.

Defendant further contends that any employee laid off after July 21 would be entitled to no compensation because such an employee received the full amount of notice required in this case.

Plaintiffs contend that all employees laid off after June 26 but before July 29 (60 days from May 30, 1989) are entitled to nineteen days of damages. Specifically, plaintiffs assert that the "business circumstances" exception does not reduce for all employees the 60 day notice requirement; that this exception still requires the employer to give "as much notice as is practicable," 29 U.S.C. § 2102(b)(3); that if all of the defendant's employees had been laid off on June 26, as much notice as was practicable would have been 27 days; but that if, for example, someone were laid off on June 30, as much notice as was practicable to them would have been 31 days and at least 27 days (*i.e.,* May 30 through June 29) before June 30; that this is true for all employees laid off after June 26 who received less than 60 days notice; and that the period of violation for each plaintiff laid off after July 29 would vary depending upon the number of days of notice actually received prior to the individual's layoff. For example, an employee laid off on August 11, 1989, had advance notice of 46 days; thus, the period of violation as to this employee is 14 days.

Finally, defendant contends that employees who were on layoff on the day that the mass layoff/plant closing notice should

have been made, have suffered no loss of pay or benefits and have, therefore, suffered no loss which is compensable under the Act.

Plaintiffs contend that the back pay and benefits damages provided for in the Act are to compensate employees for the consequences of not being given the required notice; that the pertinent question is whether an employee has received the notice required by law, not whether the employee lost wages and benefits during the time when he or she should have had knowledge of the closing.

### A. *Employees Laid Off On June 26*

I find no fault with the defendant's proposed method of calculating back pay for employees laid off on June 26, 1989, with the exception of subtracting credit due for hours paid but not worked on June 26, 1989.[5]

### B. *Employees Laid Off Before June 26*

■ The undersigned has previously found that the employees temporarily laid off on May 18, 1989, "were 'employees' of KR on June 26, when their employment was permanently terminated; that they suffered an employment loss on that date; and that they were, therefore, 'affected employees' entitled to the same notice as any working employee terminated on June 26" [Doc. 45 at pp. 19–20].

29 U.S.C. § 2104(a)(7) defines an "aggrieved employee" as one

who has worked for the employer ordering the plant closing or mass layoff and who, as a result of the failure by the employer to comply with section 2102 of this title did not receive timely notice either directly or through his or her representative as required by section 2102 of this title.

Those employees on temporary layoff on May 18, 1989, who were permanently laid off on June 26 had worked for KR and as a result of KR's failure to comply with 29 U.S.C. § 2102 did not receive timely notice of the plant closure/mass layoff. 29

---

**5.** The undersigned's reasoning will be set forth in more detail in Part IV.B of this Memorandum and Order.

U.S.C. § 2104(a)(7). Thus, those employees temporarily laid off on May 18 and permanently laid off on June 26 are "aggrieved employees."

■ 29 U.S.C. § 2104(a)(1) provides that [a]ny employer who orders a plant closing or mass layoff in violation of section 2102 of this title *shall be liable to each aggrieved employee who* suffers an employment loss as a result of such closing or layoff for—(emphasis added).

. . . .

Employees on temporary layoff prior to June 26 are aggrieved employees who suffered an employment loss on June 26 as a result of a plant closing or mass layoff ordered by KR in violation of 29 U.S.C. § 2102. These employees are, according to the plain language of the statute, entitled to recover damages in the same way as those employees terminated on June 26. There is no requirement that aggrieved employees be on a defendant company's active payroll at the time they suffer an employment loss in order to be entitled to damages. The statute itself contemplates that employees on layoff status are employees to whom notice may be required and who can suffer an employment loss entitling them to damages. *See* 29 U.S.C. § 2102(c). *See also* 29 C.F.R. § 639.3(a)(1); *Damron v. Rob Fork Mining Corporation,* 739 F.Supp. 341, 343 (E.D.Ky.1990). The employees *temporarily* laid off on May 18, 1989, reasonably expected to return to work; they were not *terminated* until June 26, 1989; thus, these employees suffered no less and no different harm as a result of the defendant's failure to comply with WARN than those employees on the active payroll who were permanently terminated on June 26.

For the reasons stated, I find that those employees on temporary layoff prior to June 26 are entitled to damages in accordance with 29 U.S.C. § 2104.

### C. *Employees Laid Off After June 26*

I find that neither the plaintiffs' nor the defendant's interpretations of the statute with regard to those employees laid off after June 26, 1989, conforms to the literal requirements of the statute itself or to the legislative intent.

29 U.S.C. § 2101(a)(2) defines "plant closing" as

the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment *during any 30–day period* for 50 or more employees excluding any part-time employees[.] (emphasis added).

29 U.S.C. § 2101(a)(3) provides, *inter alia,* that

the term "mass layoff" means a reduction in force which—

(A) is not the result of a plant closing; and

(B) *results in an employment loss at the single site of employment during any 30–day period for*—(emphasis added)

. . . . .

The comments to the Federal Regulations promulgated by the Department of Labor explain that under the language of 29 U.S.C. § 2101(a)(2) and (3) "one merely counts up all the employment losses that occur in a 30–day period to determine coverage." *Federal Register,* Vol. 54, No. 75, April 20, 1989, at p. 16046.

It has been stipulated that on June 26, 1989, there was a plant closing or mass layoff at the defendant's Harriman plant. Although a majority of the individuals employed at defendant's Harriman plant were terminated on June 26, 1989, a skeleton crew remained employed to wind down the final operations of the plant. The skeleton crew members were laid off gradually from June 26, 1989, until September 8, 1989, when the plant finally closed its doors permanently. "An employment action that results in the effective cessation of production or the work performed by a unit, even if a few employees remain, is a shutdown." 20 C.F.R. § 639.3(4)(b).

■ All employees terminated within a 30 calendar day period from June 26, 1989 (*i.e.,* June 26, 1989, through and including

July 26, 1989), are "covered" under the WARN Act for the plant closing/mass layoff that occurred on June 26, 1989, and all are "aggrieved employees" entitled to damages for "the period of the violation" (*i.e.,* 27 calendar days), 29 U.S.C. § 2104(a)(1). *See* Conference Report, *supra,* at p. 1052, U.S.Code Cong. & Admin.News 1988, p. 2085 ("The conferees wish to clarify that *for each day of violation, an employer is liable to each aggrieved employee* for the amount paid in wages and benefits to such employee prior to the layoff...."). Although the Conference Report explains that

> the maximum violation period is 60 days, and it could be less depending upon the amount of notice given by the employer. For example, if the employer provides 20 days notice, then the maximum violation period for purposes of calculating back pay awards or civil fines would be 40 days.

*Id.* The notice given by the employer that will reduce the period of violation is *notice of the plant closing or mass layoff* and not notice of an employee's individual termination. Thus, none of the plaintiffs in this case had *actual* notice of the *plant closing/mass layoff* prior to June 26, 1989.

The statute is, however, clear that the amount for which an employer is liable under Section 2104(a)(1) is to be reduced by "any wages paid by the employer to the employee for the period of violation[.]" 29 U.S.C. § 2104(a)(2)(A). *See also* Conference Report on H.R. 3, H.R. Report No. 100.576, 100th Congress, 2d Session at p. 1051 ("The employer would be liable for back pay for each day of the violation ... *minus any earnings or related fringe benefits received from the employer during the violation period*" (emphasis added)). Thus, for example, the damages to which a plaintiff who was not terminated until July 10, 1989, is entitled would be reduced by the wages he earned on and from June 27, 28, 29, and 30 and July 3–7. This plaintiff would, however, receive the value of all of his benefits for the full 27 day violation period and any covered medical expenses which he or she incurred from July 11 until July 23, 1989, inclusive.

In summary, I find that all employees laid off on and from June 26, 1989, through and including July 26, 1989, are entitled to back pay and benefits for each day of violation (*i.e.,* 27 days), which damages shall be reduced as appropriate in accordance with 29 U.S.C. § 2104(a)(2) as previously set forth herein and in the Memorandum Opinion filed July 18, 1990.

## IV.

### A. *Vacation Pay/Credit*

■ The parties agree that plaintiffs are not entitled to recover any additional vacation pay. The parties disagree, however, with regard to whether a portion of the vacation pay paid to some of the plaintiffs entitles defendant to a credit in accordance with 29 U.S.C. § 2104(a)(2)(B). Defendant contends that employees receive vacation ranging from one to four weeks per year depending upon length of service; that employees terminated for lack of work from April 2 through July 1 are entitled to be paid for 50% of the vacation pay to which they were entitled; that employees terminated for lack of work from July 2 through October 1 are entitled to 75% of the vacation pay to which they were entitled; that the defendant paid all employees 75% of their vacation pay, including those laid off before June 26; and that under 29 U.S.C. § 2104(a)(2)(B) defendant is entitled to a credit for payment of the extra vacation pay [*see* Doc. 54]. The defendant's policy with regard to vacation pay is submitted in support of defendant's position that it was not required to pay to those laid off on June 26, 1989, 75% of their vacation pay [Doc. 54, Exh. 2].

Plaintiffs contend that the vacation payments made to employees were made to fulfill the defendant's legal obligation to provide that benefit and was not a payment contemplated by 29 U.S.C. § 2104(a)(2)(B). Specifically, plaintiffs contend that plaintiffs were only four work days short of being entitled to 75% of their vacation pay; that the defendant's decision to make significant layoffs on June 26 and not to work out the appropriate notice prevented all

employees laid off before July 1 from accruing this benefit; that J.C. Penney's decision to cancel its business relationship with the defendant did not take effect until July 14, 1989; and that the defendant's act in preventing them from working the required notice period in violation of WARN should estop it from seeking a credit for the "additional" 25% vacation pay paid to those employees terminated on June 26 [Doc. 55]. At oral argument, plaintiffs' counsel added that those plaintiffs terminated on June 26 were in substantial compliance with the vacation policy; that the Tennessee courts have held that when an employer lays off employees a very short time before the eligibility date, such employee has substantially earned the vacation pay; and that, therefore, defendant was obligated to pay those employees terminated on June 26, 75% of their vacation pay as opposed to 50%.

The undersigned respectfully disagrees. In *Textile Workers Union of America, Local No. 513 v. Brookside Mills, Inc.,* 203 Tenn. 71, 309 S.W.2d 371 (1957), three individuals sued on behalf of a class to recover vacation pay allegedly due. The plaintiff and defendant had entered into a collective bargaining agreement which provided, *inter alia,* that:

> Section 1. All employees who on June 1, 1950, and on June 1 of each succeeding contract year, have continuous service with the Employer will be paid vacation pay according to the following schedules:
>
> Those employees with 6 months or more continuous service—2% of their annual earnings.
>
> Those employees with 1 year or more continuous service—2% of their annual earnings.
>
> Those employees with 5 years or more continuous service—4% of their annual earnings.

*Brookside Mills,* 309 S.W.2d at 372. In the latter part of 1955, the defendant found it impossible to operate its business successfully due to economic conditions and began a gradual winding down of its operations. *Id.* Defendant ceased all manufacturing operations in March, 1956, and a formal written notice was given to employees on May 24, 1956, that the company would not resume operations. *Id.* The individual plaintiffs were terminated in January, February, and March, 1956, because of the defendant's decision to discontinue operations. Plaintiffs sought vacation pay that they earned or would have earned if they had remained employed on June 1, 1956. The defendant argued that an employee must have been an employee on June 1, 1956, and have continuous service as of that date. In other words, June 1 of each year was the eligibility date for vacation pay. *Id.* at 373.

The Court ruled in favor of the employees after finding that the applicable provision of the contract was ambiguous. The Court held that

> [i]f, ... in the face of this ambiguous language we should hold that an employee who has put in at least 6 months continuous time may be deprived of his vacation pay by being permanently terminated by the employer a few days short of the date of June 1 through no fault of the employee, then we would be reading into the contract a provision for a forfeiture which does not exist.

.   .   .   .   .

> We are, therefore, of the opinion that fair dealing and common justice require that we affirm the decree of the Chancellor in holding that these complainants are entitled to vacation pay.

*Brookside Mills,* 309 S.W.2d at 373–374. The Court also, however, made the following statement:

> [W]e agree with appellant that if the language of the contract is clear in its meaning and the employee fails to bring himself within its terms, no court should re-write the contract. On the other hand, where there is room for construction, as we think there is in this case, the contract should be construed so as to meet the justice and equities of the circumstances of the parties to the contract.

*Id.* at 374.

The Vacation Policy set forth in the defendant's Human Resources Policies and

Procedures Manual provides, *inter alia*, as follows:

> Unused vacation for which an employee is eligible will be paid under the following special conditions:
>
> .    .    .    .    .
>
> 2. An employee terminated for lack of work will receive vacation pay provided he/she has been employed for six continuous months and has met the eligibility requirements.
>
> .    .    .    .    .
>
> 4. The payments outlined above are made at the time of the regular final check or shortly thereafter. The amount to be paid is:
>
> .    .    .    .    .
>
> 50% of eligibility amount less any vacation paid—if the employee terminates from April 2 through July 1.
>
> 75% of eligibility amount less any vacation paid—if the employee terminates from July 2 through October 1.

[Doc. 54, Exh. 2].

To the extent that the foregoing constitutes an employment contract, *see Smith v. Morris*, 778 S.W.2d 857, 858 (Tenn.App. 1988), *application for permission to appeal denied, id.* (1989), I find that the language of same is clear and unambiguous; and that according to the terms of the "contract" those plaintiffs terminated before July 2, which includes those plaintiffs terminated on June 26, were entitled to receive, and defendant was legally obligated to pay, only 50% of the vacation pay to which they were entitled.

Accordingly, I find that the defendant was not legally obligated to pay those plaintiffs terminated on June 26, 75% of their vacation pay; that the defendant, therefore, voluntarily and without any legal obligation, paid each of these plaintiffs an additional 25% of the vacation pay to which they were entitled; and that the defendant is entitled to a credit in this amount. 29 U.S.C. § 2104(a)(2)(B).

### B. *Wages Paid For Hours Not Worked On June 26, 1989*

█ Defendant contends that its damages should be reduced by any wages paid to employees on June 26, 1989, for hours not worked on that day. It is defendant's position that such payment was voluntary and unconditional and that under 29 U.S.C. § 2104(a)(2)(B) defendant is entitled to a credit therefore.

Plaintiff contends that the statute does not deal in fractions of days; that the court used equity in giving the defendant extra days to give notice; and that the same concept should be applied here because various plaintiffs were laid off at different times during the day.

The undersigned agrees that the statute speaks in terms of days and not fractions of days. If we carry the calculation of damages to hours, then the parties will be required to determine the *precise time* each individual plaintiff received actual notice on June 26 and the number of working hours that an individual worked on June 26 without actual notice would be added to the period of violation. It is therefore my opinion that by not including June 26 as a day of violation, although all plaintiffs did not receive notice at 8:00 A.M. on June 26, "evens the score"; and that if the "period of violation" is calculated in terms of *hours* instead of *calendar days* as the statute directs, reducing the defendant's damages by the amount of wages paid for hours not worked on June 26 would not benefit the defendant in any substantial way.

For the reasons indicated, I find that the defendant is not entitled to a credit for hours paid but not worked on June 26, 1989.

It is so ORDERED and notice will issue accordingly. Attached hereto as Appendix I is a proposed "Notice of Decision and Request for Information" ("Notice"). The parties shall have 10 (ten) days from entry hereof to file any comments or suggestions with regard to said Notice. If no comments or suggestions are received within the time allowed, plaintiffs' counsel will be directed to issue the Notice attached hereto

as Appendix I to all potential members of the plaintiff class.

APPENDIX

In the United States District Court for the

Eastern District of Tennessee

Northern Division

Civ. No. 3–89–545

In Re:

Kayser–Roth Hosiery, Inc,

Plant Closing Litigation

NOTICE OF DECISION AND REQUEST FOR INFORMATION

THIS NOTICE MAY AFFECT YOUR RIGHTS. PLEASE READ CAREFULLY.

TO: Former Employees of Kayser–Roth Hosiery, Inc. (Harriman Plant) Who Did Not Request Exclusion

You were previously notified of a class action lawsuit against Kayser–Roth Hosiery, Inc., over the closing of the plant in Harriman, Tennessee, by way of a *Notice of Class Action* dated December 29, 1989, from R. Murry Hawkins, Clerk of the United States District Court, Eastern District of Tennessee. Those former employees of Kayser–Roth Hosiery, Inc., who did *not* request to be excluded from the class action are being sent this notice to explain the trial judge's decision and to request information so that the trial judge can determine specific dollar amounts to which members of the class will be entitled to recover from Kayser–Roth Hosiery, Inc.

1. *Ruling That Kayser–Roth is Liable to Certain Members of the Class.* As was explained in the earlier notice, the lawsuit was about whether or not adequate notice of the decision to close the Harriman Plant was given by Kayser–Roth. Unless a legal excuse exists, an employer is required by federal law to give employees in a "mass layoff" or "plant closing" 60 days' notice before their employment is affected. Kayser–Roth admitted not giving 60 days' notice, but contended a legal excuse existed

in that the cancellation of a major contract by J.C. Penney Company was a "business circumstance not reasonably foreseeable" at the time 60 days' advance notice should have been given. The trial judge has ruled that the cancellation of the J.C. Penney contract, in fact, caused the decision to close the plant, and that the cancellation was not reasonably foreseeable until May 25, 1989. Based upon these findings, the trial judge concluded that the notice should have been given shortly after May 25, 1989, and therefore, the Company was in violation of the law by waiting until June 26, 1989, to give written notice to the employees of the closing of the plant. Specifically, the trial judge ruled that "affected employees" should be compensated for the period of the Company's violation between May 30, 1989, and June 25, 1989, inclusive. According to the statute, the actual period of violation is determined by counting forward, from the date of the mass layoff or plant closing, the number of calendar days the employer was in violation. Therefore, the actual "period of violation" in this case was June 27 to July 23, 1989, inclusive.

2. *Affected Employees.* The class of employees included in the lawsuit, except those requesting exclusion, is made up of all former employees at the Harriman Plant who were "affected employees" (within the meaning provided in federal law) and who sustained an "employment loss" (within the meaning provided in federal law) including but not limited to those employees who were temporarily laid off on May 18, 1989, and not later recalled, and those employees terminated on and from June 26, 1989, through and including July 26, 1989, except those discharged for cause, leaving voluntarily, or retiring.

A. *Employees Laid Off on May 18, 1989, and Not Recalled.* The trial judge ruled that employees indefinitely and temporarily laid off on May 18, 1989, and who were not later recalled, were terminated on June 26, 1989. Based upon this finding, the trial judge has concluded that those employees (approximately 160 people) were "affected employees" entitled to notice.

Thus, they are entitled to be compensated for the Company's period of violation (June 27 to July 23, 1989, inclusive).

B. *Employees Laid Off on June 26, 1989.* Employees laid off permanently the day the closing of the plant was announced, June 26, 1989 (approximately 340 people), have been found to be covered employees and are entitled to be compensated for the Company's period of violation (June 27 to July 23, 1989, inclusive).

C. *Employees Laid Off Between June 26, 1989 and July 26, 1989.* Employees who worked *after* the announcement of the closing on June 26, 1989, but were laid off at some point before or on July 26, 1989, are "affected employees" and are entitled to be compensated for the Company's period of violation (June 27 to July 23, 1989, inclusive).

D. *Employees Laid Off After July 26, 1989.* Employees laid off after July 26, 1989, are not entitled to any compensation. As to these employees, federal law was not violated.

**IT SHOULD BE NOTED THAT ANYONE WHOSE TERMINATION FELL WITHIN THE FOREGOING DATES, BUT WHO WAS TERMINATED FOR CAUSE, VOLUNTARILY QUIT OR RETIRED, IS NOT ENTITLED TO RECOVER.**

3. *Compensation.*

A. *Back Pay.* The employees entitled to recover as explained in the earlier sections of this notice are entitled to receive back pay during the period of the violation (June 27 to July 23, 1989, inclusive). This means back pay for 19 business days at the higher of either the employee's (1) average rate during the last 3 years of employment or (2) final regular rate. Of course, appropriate federal income taxes and social security must be withheld from any award.

B. *Benefits.* Generally, the trial judge concluded that the class members who are entitled to recover may, in addition to back pay, receive the value (premiums or cost of benefits to Kayser–Roth) of medical insurance, savings plan contributions, sickness benefits, vacation pay, and pension contributions, and weekly disability benefits, all calculated for the period of the violation. Additionally, with respect to medical insurance the trial judge ruled that employees who bought medical insurance covering the period of the violation at a cost to them greater than the cost to them while employed by Kayser–Roth, could recover the additional cost. The trial judge also ruled that medical expenses incurred by an employee *during the period of the violation,* which would have been covered under the Kayser–Roth medical insurance plan, but which were not covered by insurance as a result of employment termination, are recoverable (see instructions in Section 4A below).

C. *Credit For Severance and Vacation Pay Benefits and Wages Paid During the Period of Violation.* The Court has determined that Kayser–Roth is entitled to credit for all severance payments paid to employees. The Court has also determined that employees terminated prior to July 2, 1989, were entitled to 50% of their vacation pay but that Kayser–Roth paid these employees 75% of their vacation pay. Thus, to each of the plaintiffs terminated prior to July 2, 1989, Kayser–Roth is entitled to a credit for the payment of vacation pay in excess of 50% of the vacation pay to which each of these employees was entitled. Finally, the Court has determined that Kayser–Roth is entitled to a credit for any wages earned by and paid to employees after June 26, 1989.

D. *Salaried Employees.* The evidence indicates that of the salaried employees at Harriman, 23 were laid off on June 30, 1989. All of these salaried employees received severance payments which exceeded in amount the back pay and value of medical insurance premiums for the period of violation. These people would *not* be entitled to recover any money unless they incurred medical expenses (not covered by insurance) during the period of violation (June 27, 1989 through July 23, 1989, inclusive) as described in Section 4–A below which, when added to the back pay and

medical premiums, exceeds the severance payment.

4. *Matters Not Yet Decided.*

A. *Personalized Information.* One of the purposes of this notice is to obtain from those of you entitled to recover information necessary to compute the damage awards. If you appear to be an "affected employee" and entitled to recover from the information we have been provided, you will find enclosed a personalized sheet containing (1) the amount of back pay, (2) the value of medical insurance, and (3) severance pay you received at or about the time of layoff. (Those of you who were terminated after July 26, 1989, will not have a personalized sheet because you are not entitled to recover.) The enclosed sheet requests we be provided information if any of the following is true: either *(1) you bought medical insurance for the period of the violation, (2) you incurred medical expenses during the period of violation not covered by medical insurance, and/or (3) you feel any of the personalized information on the sheet about back pay or severance pay is wrong.* Please correspond with us by _____, 1990, if any of the foregoing applies to you by providing copies of medical bills incurred, evidence of cost of medical insurance, or an explanation of what you believe is incorrect about the back pay or severance pay. If we do not hear from you, you will be bound by the numbers shown on the enclosed sheet and we will assume you have not incurred the additional costs.

B. *Appeal.* The trial judge's ruling described herein cannot be appealed until after the damages have been determined.

5. *Additional Information.* Any questions you have concerning the matters contained in this notice, any information you are required to submit to us by this notice, and any and all corrections in personalized information or changes of names or addresses should be addressed to: **Thomas M. Hale, Class Counsel, KRAMER, RAYSON, LEAKE, RODGERS & MORGAN, P.O. Box 629, Knoxville, Tennessee, 37901 (Phone 615/525–5134).**

*Reminder as to Time Limit*

IF THE REQUESTS FOR CORRECTIONS OR ADDITIONAL INFORMATION MADE IN THIS NOTICE ARE APPLICABLE TO YOU, YOU MUST RESPOND TO CLASS COUNSEL WITH THE INFORMATION BY _____, 1990.

This ____ day of October, 1990.

Kayser–Roth Class Counsel:

_____
Thomas M. Hale

_____
E.H. Rayson

OF COUNSEL:

Kramer, Rayson, Leake,
  Rodgers & Morgan
P.O. Box 629
(615) 525–5134

J. Polk Cooley
P.O. Box 7
Rockwood, TN 37854
(615) 354–1432

Richard K. Evans
P.O. Box 777
Kingston, TN 37763
(615) 376–5353

NAME:
ADDRESS:

DATE OF YOUR PERMANENT LAYOFF:
        (Even if indefinitely laid off on May 18)

ANTICIPATED BACK PAY:                             $_____
(152 hours (19 days × 8 hours) × $_____ (rate))

ANTICIPATED MEDICAL INSURANCE BENEFIT     $_____

SEVERANCE PAY YOU RECEIVED:             $_____

WAGES EARNED AND RECEIVED AFTER June 26, 1989:  $_____

If the foregoing information appears to be correct, and the following questions DO NOT apply to you then simply keep this Notice for your information. If the following questions apply to you, then answer the questions AND send back both the form and any papers requested to THOMAS M. HALE, Esq., P.O. BOX 629, KNOXVILLE, TENNESSEE 37901.

If you bought medical insurance coverage that became effective at the time of layoff or during the period from June 27 to July 23, 1989, inclusive:

(1) Put the cost of the insurance to you:       $_____
(2) Enclose copies of all bills for such medical insurance.
(3) State whether the insurance covered only you, you and
    one dependent, or you and 2 or more dependents.    _____

If you incurred medical expenses of any kind during the period from June 27 to July 23, 1989, inclusive, that were not paid by medical insurance:

(1) Put the total amount of those medical expenses:  $_____
(2) Enclose copies of all bills for such medical expenses.

If the information provided above (layoff date, final rate of pay, back pay, or severance pay) appear to be incorrect, please explain why you think it is incorrect.