David W. JOSHLIN, et al., Plaintiffs,

v.

GANNETT RIVER STATES PUBLISH-ING CORPORATION, d/b/a The Arkansas Gazette; and Little Rock Newspapers, Inc., d/b/a The Arkansas Democrat–Gazette, Defendants.

No. LR–C–92–66.

United States District Court,
E.D. Arkansas, W.D.

Feb. 5, 1993.

See also, —— F.R.D. ——.

Mark L. Martin, David B. Sterling, Martin, Trumbo & Sterling, Fayetteville, AR, for plaintiffs.

James W. Moore, Friday, Eldredge & Clark, Little Rock, AR, for defendant Gannett.

John E. Tull, III, Williams & Anderson, Little Rock, AR, for defendant Little Rock Newspapers.

### ORDER

EISELE, District Judge.

Defendants' motions to dismiss, or in the alternative, for partial summary judgment, are before the Court. Plaintiffs' motion for partial summary judgment also is before the Court. This is a complaint for damages alleging Defendant Gannett River States Publishing Corporation's (Gannett's) failure properly to notify Plaintiffs of their pending termination of employment as a result of a plant closing, in violation of the Worker Adjustment and Retraining Notification Act (WARN). The Court grants Plaintiffs' motion for partial summary judgment and denies Defendants' motions for partial summary judgment for the reasons discussed below.

Plaintiffs, 95 former employees of Gannett's Arkansas Gazette, filed the instant complaint as a result of their termination of employment with the Gazette in 1991. Defendant Gannett admittedly failed to notify Plaintiffs and other persons 60 days prior to the closing of the Arkansas Gazette, in violation of WARN, 29 U.S.C. §§ 2101 *et seq.* As a consequence, Gannett had to comply with the penalty provision of WARN by paying its former workers for the 60 days after the Gazette closed. Defendant Little Rock Newspapers, Inc., now doing business as the Arkansas Democrat–Gazette, purchased the Gazette and, by contractual arrangement and by statute, incurred partial liability to pay certain former Gazette employees who temporarily worked for the Democrat–Gazette after the Gazette closed.

All parties agree that Defendants paid the affected employees for the equivalent of the time each former employee would have worked in the ensuing 60 days, i.e., some 42.5 days. Plaintiffs' complaint seeks a full sixty days pay for each Plaintiff, not merely wages for those days each Plaintiff would have worked in the 60–day period following the closing of the Gazette.

The Court construes Defendants' motions to dismiss as motions for partial summary judgment. *Fed.R.Civ.P. 12(c).* The Court's Order dated December 18, 1992, notified all parties that the Court would decide the issue of liability on the pleadings.

The Court must construe the following portions of the WARN Act:

Any employer who orders a plant closing or mass layoff in violation of section 2102 of this title [requiring 60 days advance notice of a plant closing or mass layoff] shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff for—

(A) back pay for each day of violation at a rate of compensation not less than the higher of—

(i) the average regular rate received by such employee during the last 3 years of the employee's employment; or

(ii) the final regular rate received by such employee; and

(B) benefits under an employee benefit plan described in section 1002(3) of this title, including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment loss had not occurred.

Such liability shall be calculated for the period of the violation, up to a maximum of 60 days, but in no event for more than one-half the number of days the employee was employed by the employer.

29 U.S.C.A. § 2104(a)(1) (Supp.1992).

As the Supreme Court recently stated:

In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statutes' meaning, in all but the most extraordinary circumstances, is finished....

\* \* \* \* \* \*

The controlling principle in this case is the basic and unexceptional rule that courts must give effect to the clear meaning of the statute as written.

*Estate of Cowart v. Nicklos Drilling Co.,* — U.S. ——, ——, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992) (citation omitted). Earlier last year, the Supreme Court stated that:

... [I]n interpreting a statute a court should always turn first to one, cardinal cannon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.

*Connecticut National Bank v. Germain,* — U.S. ——, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992).

The instant complaint seeks damages for both hourly and salaried workers. The statute is absolutely unambiguous on its face as to the compensation to be paid to salaried workers. Each salaried worker must be paid "back pay for each day of violation...." 29 U.S.C. § 2104(a)(1)(A). Such liability "shall be calculated for the period of the violation, up to a maximum of 60 days...." 29 U.S.C. § 2104(a)(1). Salaried workers, then, must receive 60 days of pay. The salaried workers must receive this compensation *whether or not they would have worked during each day of the subsequent 60–day period.* This is so because salary is a fixed amount of compensation for a given period of time.

There is no reason to differentiate between salaried and hourly workers. Back pay is required for "each day of violation." The statute does not read "back pay for each working day of violation for hourly workers but for each calendar day of violation for salaried workers." Nor does the statute read "back pay for each working day during the period of violation." Nor does the statute read "back pay for each day of violation that the employee would have received compensation," although the next subsection of the statute states that each employee shall receive the *employee benefits* that "would have been" covered had the employee been employed. 29 U.S.C. § 2104(a)(1)(B). The purpose of WARN is to provide:

protection to workers, their families and communities by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs. Advance notice provides workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market. WARN also provides for notice to State dislocated worker unites so that dislocated worker assistance can be promptly provided.

20 C.F.R. § 639.1(a) (Regulations implementing WARN). It would be anomalous to read the statute as giving salaried workers better compensation under the Act than hourly workers, who are more in need of assistance, skill training, or retraining. The Court must read the statute in this context. *See, Rowland v. California Men's Colony,* — U.S. ——, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993).

In accordance with the Supreme Court's rules of construction, the Court concludes that "back pay for each day of violation" means what it says and says what it means as to all Plaintiffs. The Court agrees with other courts that have published opinions interpreting the same language. *United Steelworkers of America, AFL–CIO–CLC v. North Star Steel Company, Inc.,* 809 F.Supp. 5 (M.D.Penn.1992); *Carpenters' District Council of New Orleans & Vicinity v. Dillard Department Stores, Inc.,* 778 F.Supp. 297 (E.D.La.1991); *see also, United Electri-*

*cal Radio and Machine Workers v. Maxim, Inc.,* 5 I.E.R. 629 (BNA), 1990 WL 66578 (D.Mass.1990).

The Court does not consider the legislative history in this case because the statute is clear on its face.[1] This Court's inquiry ends at the language of the statute.

Defendants argue that "back pay" has a well-defined meaning that limits Plaintiff's claim. Defendants claim that "back pay for each day of violation" means "back pay for each working day during the period of violation." The Court disagrees. The statute says "back pay for each day of violation." The language clearly contemplates a "violation" of less than 60 days—indeed, as little as one day. In a case where the an employer covered by the act gives notice 59 days prior to closing, and the 60th day falls on January 1, a legal holiday, the employer would be obligated to pay affected employees for the one day of notice they failed to give. Similarly, if the employer gave 59 days notice and the 60th day fell on a Sunday, the employer would nevertheless be required to pay each worker for that day.

The violation is not "loss of income," *per se.* The statute is clear on this issue because it does not permit an employer to offset its liability under the statute with wages an affected employee obtains from other sources, such as subsequent employers. 29 U.S.C. § 2104(a)(2). This is a punitive statute, not a "make-whole" statute. The violation is the failure to give employees adequate opportunity to find employment elsewhere. So, where the employer fails adequately to give notice, the statute requires payment for each day's failure to give notice. That day may be a work day, a non-work day, a holiday, a weekend day, or any day. The Court concludes that its interpretation comports with the plain meaning of the statutory language as well as the statutory purpose as expressed in the interpretive regulations.

Defendant cites *Jones v. Kayser–Roth Hosiery,* 748 F.Supp. 1292 (E.D.Tenn.1990), and *In re Cargo, Inc.,* 138 B.R. 923 (Bankr. N.D.Iowa 1992), as directly on point in sup-

port of their argument. However, as Plaintiffs point out, neither *Jones* nor *Cargo* interpreted the statutory language at issue. The two opinions instead calculate damages, albeit pursuant to Defendants' suggested interpretation, where the parties to the respective litigations *stipulated* to the interpretation of the statute. The Court need not take those stipulations as settled law. Moreover, at least three published cases directly contradict Defendants' argument and support Plaintiff's assertion. *United Steelworkers of America, AFL–CIO–CLC v. North Star Steel Company, Inc.,* 809 F.Supp. 5 (M.D.Penn. 1992); *Carpenters' District Council of New Orleans & Vicinity v. Dillard Department Stores, Inc.,* 778 F.Supp. 297 (E.D.La.1991); *see also, United Electrical Radio and Machine Workers v. Maxim, Inc.,* 5 I.E.R. 629 (BNA) 1990 WL 66578 (D.Mass.1990).

Defendants' unjust enrichment argument also is unavailing. Defendants claim that an award of pay for each day of violation, here a full 60 days, would give Plaintiffs a windfall of some 17.15 days' pay per Plaintiff. The Court disagrees that this is a "windfall." An employer who fails to give notice must pay affected workers for each day of violation without receiving anything in return. Workers are paid for each day of violation without doing any work. Defendants concede the punitive nature of the liability provision. Defendants further concede that Congress sought to maximize the punitive effect of the liability provision by prohibiting employees from offsetting the back pay remedy with any pay that its former employees receive from a subsequent employer. 29 U.S.C. § 2104(a)(2). In light of the foregoing, Defendants' argument that the statute provides solely for a "make whole" remedy must fail.

A day of violation is any day for which Defendant failed adequately to give notice. Each day of the 60 days prior to closing that Defendant Gannett failed to give notice to its workers is a day of violation. Defendants must pay all Plaintiffs for every day of violation. The Court's construction of the statute clarifies for employers the nature of the

---

1. *See, Bath Iron Works Corp. v. Director, Office of Workers' Compensation Programs,* — U.S. —, ——, 113 S.Ct. 692, 693, 121 L.Ed.2d 619 (1993).

workers' remedy, provides a marginal additional incentive to employers to give as much notice as possible, and effectuates the purpose of the Act to give workers and their families some transition time to adjust to the prospective loss of employment.[2]

IT IS THEREFORE ORDERED that Plaintiffs' motion[3] for partial summary judgment be, and it is hereby, GRANTED.

IT IS FURTHER ORDERED that Defendants' motions[4] to dismiss or in the alternative for partial summary judgment be, and they are hereby, DENIED.

IT IS FURTHER ORDERED that the parties be, and they are hereby, DIRECTED to complete all relevant discovery, previously propounded to the parties and stayed by the Court, prior to March 19, 1993.

IT IS FURTHER ORDERED that the parties be, and they are hereby, DIRECTED to submit interim status reports prior to March 26, 1993, indicating their intentions to try the remaining damages issues, and how long such a trial might take.

IT IS FURTHER ORDERED that the pending motions[5] for extensions of time be, and they are hereby, DISMISSED AS MOOT; the Court deems the respective filings timely filed.

IT IS SO ORDERED.

---

2. The Court makes no determination of the interpretation of the damages provision, i.e., the higher of the average final regular rate of pay for each employee. 29 U.S.C. § 2104(a)(1)(A).

3. Docket no. 8.

4. Docket nos. 2 and 5. Defendant Gannett's "motion to deny Plaintiffs' motion for summary judgment, docket no. 18, also is denied."

5. Docket nos. 15 and 26.